1. STREET RAILROADS—CHARTER—AMENDMENT BY GENERAL LAW.

Under Const. art. 8, § 1, reserving to legislatures the power to alter
statutes creating corporations, Laws 1890, c. 565, § 100, providing that
any street-surface railroad may operate its road by any power except loco-
motive steam power, and section 90, subjecting every existing street-sur-
face railroad to such provision, apply to a former special act of incorpora-
tion authorizing a street-surface railroad to operate by dummy engines.

2. SAME—OPERATION—POWER—KINETIC MOTORS.

A kinetic motor, operated by steam, generated from water heated in
a stationary boiler, and transferred to a reservoir under the car and the
motor, and kept from cooling by a slow hard coal fire beneath the reser-
voir, is not the locomotive steam power contemplated by Laws 1890, c.
565, § 100, providing that a street-surface railway may operate its road
by any power excepting locomotive steam power.

3. SAME.

The fact that a kinetic motor is still in its experimental stages, or that
the company operating a street-railroad company is controlled by persons
interested in the motor system, is no ground for the railroad commis-
sioners to withhold consent for the operation of the street railroad with
such motors.

4. SAME—RAILROAD COMMISSIONERS—REVIEW OF DECISIONS.

The action of the board of railroad commissioners in determining the
right of a street-surface railroad to operate its road with kinetic motors,
based on a public trial, of which due notice to parties interested was given,
and in which witnesses were examined, counsel heard on both sides, and
judgment was pronounced, as provided by Laws 1890, c. 565, art. 6, making
it a tribunal to hear such matter, is judicial in its nature, and is review-
able by the supreme court on certiorari.

Certiorari by the people, on the relation of the Babylon Railroad,
against the board of railroad commissioners of the state of New
York, to review the determination of the commissioners in refusing
to permit relator to change its motive power from horses to kinetic
power or steam power. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-
NAM, and MERWIN, JJ.

Charles L. Easton and Robert G. Ingersoll, for relator.
G. D. B. Hasbrouck, Dep. Atty. Gen., opposed.

LANDON, J. The relator is a street-surface railroad company
incorporated by special act (chapter 517, Laws 1871) to construct,
maintain, and operate a railroad through the streets of the village of
Babylon, L. I., and to operate the same "by horses, mules, or dummy
engines." It constructed its railroad, and operated it by horse power.
In September, 1897, having obtained the consent of the owners of one-
half of the property bounded upon its line of railroad, it applied to the
state board of railroad commissioners for the approval by the board
of a change of its motive power from horse power to the "kinetic
motor." After a hearing duly had, and evidence taken, the board
refused its consent, assigning two grounds therefor: (1) That the
kinetic motor is "a locomotive steam power," and its use prohibited

by section 100 of the railroad law.    (2) It did not appear from the testimony "that the system has been demonstrated to be a practical or practicable one; on the contrary, it is wholly in its experimental stages;" and that the relator "is controlled by persons interested in this motor system." Section 100 of the railroad law (chapter 565, Laws 1890) provides that:

"Any street surface railroad may operate any portion of its road by animal or horse power, or by cable, electricity, or any power other than locomotive steam power, which may be approved by the state board of railroad commissioners, and consented to by the owners of one-half of the property bounded on that portion of the railroad with respect to which a change of motive power is proposed."

Section 90 of the act subjects every existing street-surface railroad to the above provision, and hence the charter of the relator allowing it to use dummy engines is modified accordingly, certainly so far as substituting such power, after the railroad law took effect, for the horse power in use when said law took effect.    In view of the power which the constitution reserves to the legislature to alter or repeal statutes creating corporations (article 8, § 1), the suggestion that the special act creating this corporation, and its acceptance of the conditions, created a contract, is not well founded.    Whether, if the dummy engine had been in use when the railroad law took effect, it would have been necessary to procure the approval of the board to the continuance of its use, we need not inquire.    We think, however, that the kinetic motor of the relator is not the "locomotive steam power" contemplated by the statute.    The statute evidently contemplates the locomotive steam engine commonly employed upon other than street-surface railroads,—an engine obviously unsuitable and unsafe for use upon the surface of city and village streets.    The relator's motor is so constructed and operated as to be free from the noise, smoke, cinders, and escaping steam of the ordinary locomotive steam engine.    It is a steam engine, but the steam is generated from water heated in a stationary boiler, and transferred to a reservoir under the car and under the motor, and kept from cooling by a slow hard coal fire beneath the reservoir.    It is a sort of dummy steam locomotive engine, forming part of the car, and is essentially different from the well-known "locomotive steam power" mentioned in the statute.    It may be yet in its experimental stage, but the requisite consents to its use of property owners along the line of the road seem to afford some evidence that the property owners have no fear upon that account.

We think, when the board of railroad commissioners decided that the statutes forbade them to give their approval, they misconceived the law.    The relator had the right to have its application considered free from such misconception, and hence the determination should be reversed.    We do not think that the statute requires the board to withhold its approval because the motor is still in its experimental stages, or because the relator is controlled by persons interested in this motor system.    Unless the rights or safety of the public or of its members are exposed to danger, it is not unreasonable to tolerate experiments having for their object private gain through a new means of public benefit.    These, however, are matters which the statute

leaves to the discretion of the board of railroad commissioners, and the court will not revise or review its exercise of discretion in these respects so long as no statutory rule or legal principle affecting the rights of the relator is violated. The objection is taken in the return, and was pressed upon the argument, that the action of the board was not in its nature judicial, but was either legislative or administrative, and therefore not reviewable by the court. It was not legislative, since it was not lawmaking in its nature; it was not executive or ministerial, because the statute does not prescribe that the board shall approve the application or disapprove it, according as certain consents shall be given or withheld, or certain formal proofs made or left unmade (People v. Bell, 119 N. Y. 175, 23 N. E. 533); but it was judicial, because the statute makes the board a tribunal to hear and determine the matter (People v. Railroad Co., 134 N. Y. 506, 31 N. E. 873). There was a public trial, after due notice to parties interested; witnesses were examined, counsel upon both sides heard, and judgment or determination pronounced. The statute permits, if it does not absolutely enjoin, such procedure. Laws 1890, c. 565, art. 6. Thus the requirements of due process of law are observed, very much as in People v. Jones, 112 N. Y. 597, 20 N. E. 577. The decision upon the application has the force of a self-executing judgment, since it grants or withholds a privilege or franchise. In this respect it is unlike such of the decisions and recommendations of the board as can be enforced only by the aid of the court. Laws 1890, c. 565, § 162. It is a part of our state system to commit many governmental powers involving judicial, executive, and ministerial functions to a single officer or a board or commission; the exercise of the executive or ministerial duty being in some cases dependent upon the exercise of the judicial function. Our constitution, unlike that of the United States, does not commit the whole judicial power to the courts in the first instance; hence our system of review by certiorari of "the determination of a body or officer." Code Civ. Proc. § 2120 et seq. If such a body, in the exercise of its functions, renders its determination in pursuance of a misapprehension of the law, such error should be corrected. Id. § 2140, subd. 3.

Determination reversed, with $50 costs and disbursements. All concur.