THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARY ANNA
STEWARD et al., Respondents, *v.* THE BOARD OF RAILROAD
COMMISSIONERS OF THE STATE OF NEW YORK and ASHLEY
W. COLE, FRANK M. BAKER and GEORGE W. DUNN, being
the Members Thereof, and the GOSHEN RAILROAD COM-
PANY, Appellants.

1. RAILROADS — DETERMINATION BY RAILROAD COMMISSIONERS TO
ISSUE CERTIFICATE OF CONVENIENCE AND NECESSITY IS REVIEWABLE BY
CERTIORARI. A determination by the board of railroad commissioners,
under section 59 of the Railroad Law, that a certificate shall issue that
public convenience and a necessity require the construction of a proposed
railroad, is the exercise of a judicial function, and therefore reviewable
in the courts by certiorari.

2. DETERMINATION FINAL AS TO LANDOWNER UPON QUESTION OF CON-
VENIENCE AND NECESSITY. A determination by the railroad commission-
ers that a certificate of public convenience and necessity shall issue is a
final determination of the rights of the owners of land through which the
railroad will pass, if constructed, as to the question of public convenience
and necessity, and hence they are not affected by the limitation upon the
issuance of the writ of certiorari imposed by subdivision 1 of section 2122
of the Code of Civil Procedure.

3. BOARD NOT ENTITLED TO BE HEARD ON REVIEW OF ITS DETERMI-
NATION. The general rule, that a court, or board exercising judicial func-
tions by permission of a statute has no interest in maintaining its deter-
mination and therefore cannot be heard on appeal therefrom, applies to
the board of railroad commissioners on a review, by certiorari, of their
determination that a certificate of public convenience and necessity shall
issue.

*People ex rel. Steward* v. *Bd. R. R. Comrs.*, 40 App. Div. 559, affirmed.

(Argued June 16, 1899; decided October 3, 1899.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the third judicial department, entered May
22, 1899, reversing on certiorari a determination of the board
of railroad commissioners granting the application of the
Goshen Railroad Company for a certificate of public conveni-
ence and a necessity, under section 59 of the Railroad Law
(Chapter 565 of the Laws of 1890, as amended by chapter 676
of the Laws of 1892 and chapter 545 of the Laws of 1895).

The facts, so far as material, are stated in the opinions.

*Adelbert Moot* for Goshen Railroad Company, appellant. The Appellate Division had no right to review the proceedings of the railroad commissioners and make the order wholly reversing the determination of the board of railroad commissioners of the state of New York which granted the certificate under section 59 of the Railroad Law, because the railroad commissioners made no " final determination " affecting the rights of the relators. (*People ex rel.* v. *R. R. Comrs.*, 158 N. Y. 421; Code Civ. Pro. §§ 2120, 2122, 2140, 3360, 3365, 3367; L. 1895, ch. 545, § 59.) The order appealed from should be reversed, because the return must be accepted as true, and the reversal does not appear to have been made upon facts, and could not have been made on the facts in this case. (*People ex rel.* v. *Martin*, 142 N. Y. 228; *People ex rel.* v. *Wurster*, 149 N. Y. 549; Code Civ. Pro. § 2140; *People ex rel.* v. *Barker*, 152 N. Y. 417; *People ex rel.* v. *Barker*, 147 N. Y. 31.) The Appellate Division erred in refusing a hearing to the attorney-general, as attorney for the railroad commissioners, and in reversing their determination, without giving their attorney and counsel a hearing. (*People ex rel.* v. *Jones*, 110 N. Y. 509.) The order appealed from cannot be sustained on the theory that the Goshen Railroad Company is a " parasite " of the Erie Railroad Company, and the application to the railroad commissioners under section 59 is a manifest evasion of section 13 of the Railroad Law. (*People ex rel.* v. *Comrs.*, 135 N. Y. 447; *Matter of D. & S. W. R. R. Co.*, 92 Hun, 408.) " Public convenience and a necessity " were shown. (*Matter of L. L. R. R. Co.*, 11 App. Div. 233; *Mc Williams* v. *Jewett*, 14 Misc. Rep. 491; *Matter of N. Y. C. & H. R. R. R. Co.*, 77 N. Y. 248; *N. Y., N. H. & H. R. R. Co.* v. *Welsh*, 52 N. Y. S. R. 532.) The writ of certiorari was improperly granted because the rights of relators were not finally determined; hence, relators have no standing in court. (*People ex rel.* v. *Commissioners*, 135 N. Y. 447; *People ex rel.* v. *Hill*, 126 N. Y. 497; *People ex rel.* v. *Supervisors*, 43 Barb. 232; *People ex rel.* v. *Austin*, 20 App. Div. 1; *People ex*

*rel.* v. *Walter*, 68 N. Y. 403 ; *People ex rel.* v. *Commissioners of Public Parks*, 97 N. Y. 37; *People ex rel.* v. *Supervisors*, 131 N. Y. 468 ; *People ex rel.* v. *Board of Health*, 140 N. Y. 1; *Matter of Mt. Morris Square*, 2 Hill, 14.)

*John C. Davies, Attorney-General*, and *John H. Coyne* for the Board of Railroad Commissioners, appellant.   The Appellate Division erred in holding that the board of railroad commissioners had no right to be heard or represented by counsel upon this proceeding.   (L. 1895, ch. 545, § 59 ; *People ex rel.* v. *Jones*, 110 N. Y. 510; *People ex rel.* v. *Sackett*, 15 App. Div. 290; *People ex rel.* v. *Town*, 1 App. Div. 127.)   The relators were not entitled to have a writ of certiorari issued to review the proceedings of the board, and the writ should, therefore, be quashed and the proceedings dismissed.   (*People ex rel.* v. *Walter*, 68 N. Y. 403 ; *People ex rel.* v. *Bd. Suprs.*, 131 N. Y. 468; *Matter of Mt. Morris Square*, 2 Hill, 14 ; *People ex rel.* v. *Bd. Suprs.*, 43 Barb. 232 ; 34 N. Y. 516 ; *People ex rel.* v. *Bd. of Comrs.*, 97 N. Y. 37 ; *People ex rel.* v. *Board of Health*, 140 N. Y. 1.)   The granting of the certificate was not a violation of section 13 of the Railroad Law. (*Matter of L. L. R. R. Co.*, 11 App. Div. 233.)   The granting of the order for a certificate by the board of railroad commissioners was justified by the evidence and was a reasonable exercise of their discretion which should not be disturbed upon appeal.   (*Matter of N. H. R. R. Co.*, 76 Hun, 76; *Matter of K., Q. & S. R. R. Co.*, 6 App. Div. 241; *Matter of A., J. & G. R. R. Co.*, 86 Hun, 578 ; *Matter of D. & S. W. R. R. Co.*, 92 Hun, 406 ; *Matter of L. L. R. R. Co.*, 11 App. Div. 233.)

*Howard A. Taylor* and *Origen S. Seymour* for respondents.   The respondents are entitled to rest upon the order of annulment as being in one sense upon the facts.   (*People ex rel.* v. *Barker*, 152 N. Y. 417; *Matter of K. C. E. R. R. Co.*, 82 N. Y. 95.)   The board of railroad commissioners is not a party aggrieved, and, therefore, is not entitled to appeal. (*People ex rel.* v. *Jones*, 110 N. Y. 509; *People ex rel.* v.

1899.] People ex rel. Steward *v.* Railroad Comrs. 205

N. Y. Rep.]  Opinion of the Court, per Parker, Ch. J.

*Lawrence,* 107 N. Y. 607.) Certiorari was the correct remedy. (*Matter of N. F. & W. R. Co.,* 108 N. Y. 375; *People ex rel.* v. *Bd. R. R. Comrs.,* 4 App. Div. 259; *People ex rel.* v. *Bd. R. R. Comrs.,* 158 N. Y. 421; *People ex rel.* v. *Bd. R. R. Comrs.,* 158 N. Y. 711.) The relators were in a position to procure the writ and to bring up the questions here involved. (Code Civ. Pro. § 2127; *People ex rel.* v. *Jones,* 112 N. Y. 597; *Webb* v. *Town of Rocky Hill,* 21 Conn. 468; *Terry* v. *Town of Waterbury,* 35 Conn. 526; *States Attorney* v. *Bramford,* 59 Conn. 402; *Osterhoudt* v. *Rigney,* 98 N. Y. 222.) To regard the Goshen Railroad Company as in reality a separate organization is *ipso facto* to condemn it as not affording a public use. *People ex rel.* v. *Martin,* 142 N. Y. 352; *Matter of R. & S. R. R. Co.* v. *Davis,* 43 N. Y. 137; *Matter of H. & L. R. R. Co.,* 110 N. Y. 119; *Matter of S. R. C. R. Co.,* 128 N. Y. 408.) Considering the Goshen Company as part of the Erie Company, the application was a palpable attempt to evade the limitations of section 13 of the Railroad Law, and was, therefore, an enterprise unlawfully undertaken. (*Durousseau* v. *U. S.,* 6 Cranch, 307; *Matter of A., J. & G. R. R. Co.,* 86 Hun, 578; L. 1892, ch. 676, § 59; Code Civ. Pro. § 2410; *Matter of K. Q. & S. R. R. Co.,* 6 App. Div. 241; *Matter of R. Q. & S. R. R. Co.,* 36 App. Div. 514.) The "preponderance of proof" was against the public necessity for the project, whether considered as a part of the Erie or not. (*Matter of L. L. R. R. Co.,* 11 App. Div. 233; *Mc Williams* v. *Jewett,* 14 Misc. Rep. 491; *Clark* v. *Town of Middleburg,* 47 Conn. 331; *Terry* v. *Town of Waterbury,* 35 Conn. 526; *City of Hartford* v. *Day,* 64 Conn. 250.)

Parker, Ch. J. The Goshen Railroad Company, having performed the preliminary requirements of the statute, applied to the railroad commissioners for the certificate authorized by section fifty-nine of the Railroad Law; the railroad commissioners inspected the location of the proposed new road, and in pursuance of notice duly given a public hearing was granted

to enable those of the public who were opposed to the grant-
ing of the certificate to appear and present their reasons for
their opposition; upon said hearing the relators appeared in
person and by counsel and produced witnesses who were duly
sworn by the railroad commissioners, and thereupon gave
testimony in opposition to the claim of the railroad company
that the building of the railroad was a work of public con-
venience and a necessity; later on the railroad commissioners
issued the certificate prayed for, whereupon the relators
applied for a writ of certiorari to review such determination
on the part of the railroad commissioners, and the same hav-
ing been allowed by the Special Term, and the Goshen Rail-
road Company brought in as a party, a hearing was had in
due course in the Appellate Division, which resulted in a
decision by that court reversing and annulling the deter-
mination of the railroad commissioners. The Goshen Rail-
road Company on this appeal taken from the order, urges
that this court should hold that the Appellate Division was
without authority to review such determination; that the
statute confers upon the railroad commissioners an important
duty which it prefers to call administrative rather than judi-
cial, and which it insists is subject to no review by the courts.
The issuing of a common-law writ of certiorari to review the
judicial determinations of inferior judicial tribunals and offi-
cers acting judicially under authority of statute, to correct
errors of law affecting property rights of the parties, has for
a long time formed a part of our judicial procedure. (*Starr
v. Trustees of Rochester*, 6 Wend. 564; *People ex rel. Lough-
ran v. Railroad Commissioners*, 158 N. Y. 421, and cases
cited.) Counsel has, therefore, found it necessary to call the
duty enjoined upon the railroad commissioners by section
fifty-nine of the Railroad Law something else than a judicial
duty in order to obtain even the suggestion of a foundation
upon which to construct an argument intended to convince the
mind that such a determination as this is not reviewable by
certiorari. But it is clear that if the duty enjoined upon the
board of railroad commissioners by this section calls upon

1899.] People ex rel. Steward *v.* Railroad Comrs. 207

N. Y. Rep.]     Opinion of the Court, per Parker, Ch. J.

them to decide some question of fact every time there is an application made to them for the issuing of the certificate authorized by it, then in the making of that decision it acts judicially, notwithstanding there may be closely interwoven with it certain administrative or ministerial functions that must also be exercised. (*People ex rel. Babylon R. R. Co.* v. *Railroad Commissioners*, 32 App. Div. 179 ; 158 N. Y. 711.) In that case the certiorari was issued for the purpose of reviewing the action of the board of railroad commissioners in authorizing a change of motive power, under section one hundred of the Railroad Law, and in the course of the opinion by Mr. Justice Landon, which expressed the views of both appellate tribunals, it was said : " It is a part of our state system to commit many governmental powers, involving judicial, executive and ministerial functions, to a single officer, or a board or commission, the exercise of the executive or ministerial duty being in some cases dependent upon the exercise of the judicial function. Our Constitution, unlike that of the United States, does not commit the whole judicial power to the courts in the first instance, hence our system of review by certiorari of the determination of a body or officer."

Now, the section before us prohibits a railroad corporation from exercising any of the powers conferred by law upon such a corporation until the board of railroad commissioners shall certify that certain specific conditions have been complied with, and also that " public convenience and a necessity " require the construction of such railroad as proposed in said articles of association. The granting of such a certificate cannot be treated as an idle ceremony, required by the legislature as a mere matter of form, for the board of railroad commissioners, in order to certify, must first determine what the fact is, and it must decide that the public convenience and a necessity require the construction of the proposed railroad before it can certify that such is the fact. To enable it to pass upon that question of fact it must be in possession of the necessary evidence upon which to base a decision, and in order that the people may have an opportunity to be heard and be per-

mitted to produce evidence in opposition to the railroad's claim of a necessity, the statute requires the publication of the articles of association for three weeks in each county in which the road is proposed to be located, and further requires that the certificate shall be applied for within six months after the completion of such publication. Upon such hearing the commissioners have the right to administer oaths to witnesses, to authorize their examination and cross-examination by counsel, and while not bound by the technical rules governing the admission of evidence in actions and proceedings pending before the courts, the commissioners are authorized to, and do receive oral testimony, written and printed documents, and affidavits which in their opinion tend to throw light upon the question which in the end they are to pass upon, namely, whether "public convenience and a necessity" require the construction of the proposed railroad. This determination is one of great importance from a public point of view, and so the statute requires that it shall be passed upon at the very threshold of the corporation's existence, for thus is prevented, if the railroad ought not to be built, a waste of the money contributed by the stockholders in proceedings which may come to naught should some owner of land through which the railroad is intended to pass, succeed in establishing, in condemnation proceedings, that there is no necessity for the building of the railroad, as in *Matter of Niagara Falls & Whirlpool Railway Company* (108 N. Y. 375).

It is not my purpose to attempt to present all of the arguments that can readily be marshalled to establish that the determination made by the railroad commissioners that a certificate shall issue as called for by section fifty-nine, constitutes a judicial determination of great importance, for, as I view it, that question was settled in this court in *People ex rel. Loughran* v. *Railroad Commissioners* (*supra*). It is true that in that case another section of the Railroad Law was involved, but every argument presented by the opinion to prove that the power under consideration in that case was a judicial power is alike applicable to the power conferred upon

the commissioners by section fifty-nine.   In that case the statute provided that no railroad station "shall be discontinued without the consent of the Board of Railroad Commissioners first had and obtained."   In this case it provides that no railroad corporation shall exercise the powers conferred by law "until the Board of Railroad Commissioners shall certify * * * that public convenience and a necessity require the construction of said railroad as proposed in the said articles of association."   The reasoning which we deemed conclusive in that case is equally applicable to this one, and need not be repeated here.   The attempt that has been made to distinguish the two cases is not rested upon the claim that there is any difference in the character of the power exercised by the railroad commissioners, nor that in the one case, any more than in the other, the determination is not the final determination in that proceeding; but it is urged that in the *Loughran* case the relator residents had no other remedy than a review by certiorari, while in this case the relator residents will have a further remedy when proceedings shall have been instituted to acquire their lands by condemnation.   But it will be observed that this claim relates to the parties and not to the remedy.   That argument does not deny that such a determination by the railroad commissioners is reviewable by certiorari, but challenges merely the right of the owners of lands affected to sue out the writ, because it is said they have another remedy.

The right of the Appellate Division, therefore, to review such a determination by the railroad commissioners as is involved in this case, seems to be settled in terms by the *Loughran* case, as it is in principle by a long line of earlier cases, and this brings us to a consideration of the claim that these relators are not in a position to invoke a review of the determination by the courts.   It is true that they are residents of Goshen, as the relators in the *Loughran* case were residents of Kingston, but it is urged that the particular residents who are relators in this case also happen to own land through which the railroad will pass, if constructed, and, therefore, will have

27

an opportunity in that proceeding to try out the question of public convenience and necessity, and hence this case is within the prohibition of section 2122 of the Code of Civil Procedure, which forbids a review by certiorari of a determination which does not finally determine the rights of the parties with respect to the matter to be reviewed. There are several answers to this contention, but the one which I prefer to make takes issue with the assertion that these relators have still the right to have tried out and decided in proceedings *in invitum* the question whether this railroad, when constructed, will subserve a public use. Prior to the enactment of chapter 676 of the Laws of 1892, authorizing the making of a certificate of necessity by the railroad commissioners, it was the undoubted right of the landowner, in condemnation proceedings, to defend on the ground that the taking of private property for the purposes of the railroad petitioner was not a taking for public use. (*Matter of Niagara Falls & Whirlpool Ry. Co.*, *supra.*) This was not one property owner's right, but it was every property owner's right along the line of the railroad, while on the other hand other property owners living close to the line of the railroad, and perhaps with property so situated as to cause them to suffer far greater damage than their neighbors through whose land the railroad passed, were given no opportunity whatever to present for judicial determination the question whether the public use required the building of the railroad. Experience had shown that there were other reasons why this important question of the public convenience and necessity of a proposed railroad should be tried out and decided at the very beginning of the career of the corporation. Railroad construction was often threatened, and sometimes undertaken, with the view of securing for its promoters tribute from a railroad corporation thus threatened with competition. And again, the interests of the investors in railroad enterprises seemed to require that the promoters of such enterprises should not be permitted to undertake the construction of such a work where it was clear that public convenience and necessity did not require it. These and other

1899.] People ex rel. Steward *v*. Railroad Comrs. 211

N. Y. Rep.] Opinion of the Court, per Parker, Ch. J.

reasons undoubtedly moved the legislature to provide a method by which the question of public convenience and necessity should be judicially determined at the very beginning of the corporate life of a railroad corporation, and to accomplish that result it conferred upon the board of railroad commissioners the power and the duty to hear and decide this question in all cases. The machinery provided by the statute requires the publication of the articles of association in each county through which the proposed railroad is to pass, so that every owner of lands to be affected, as well as the public generally, may have notice of the fact that a tribunal, created by the state for that purpose, among others, is about to determine, as against them, whether public convenience and a necessity require the construction of the proposed railroad. Reasonable regulations for the working out of the scheme have been adopted by the railroad commissioners, and an opportunity is always given, as in this case, to the landowners and others interested to challenge the claim of the corporation that the construction of its railroad is a public convenience and a necessity. The fact that the question to be decided is a judicial one insures a right of review in the courts by a writ of certiorari, and thus, by a simple method of procedure, the legality of the enterprise and the public need for it are settled in one proceeding, instead of being the subjects of controversy in many, and all question is put at rest at a very early stage of the corporate existence.

If the views expressed are well founded, it follows that the determination of the railroad commissioners finally determined the rights of these parties as to the question of public convenience and necessity for the railroad, and, therefore, section 2122 of the Code of Civil Procedure does not affect them.

At the Appellate Division the attorney-general appeared by one of his deputies and asked to be heard on behalf of the board of railroad commissioners. The court held that the board had no right to be heard by counsel, but permission was given to the attorney-general to address the court on behalf of the People, and to the Goshen Railroad Company to use the

attorney-general's brief, if so desired, and it was used. The board of railroad commissioners, by the attorney-general, appealed from such order, as did the Goshen Railroad Company, and all now insist that the denial of the right of such commissioners to be heard by the attorney-general was error for which the order should be reversed. It is the general rule that a court or board exercising judicial functions by permission of some statute, has no interest in maintaining its determination, and, therefore, can neither appeal from an order of the court reversing the proceedings, nor be heard on the appeal. (*People ex rel. Breslin* v. *Lawrence*, 107 N. Y. 607; *People ex rel. Burnham* v. *Jones*, 110 N. Y. 509.) In the latter case, which furnishes an exception to the general rule, it was held that the land commissioners were in a legal sense aggrieved by the reversal of their resolution directing that a patent for certain lands under water issue to the Bartholomay Brewing Company, and, therefore, it was their duty to defend their decision. The reason assigned for the decision was that the land commissioners having determined that under the statute they ought to convey the land to the brewing company, it was their duty to do so, but so long as the order of reversal stood they were prevented from exercising the power of conveying the lands, and, hence, the decision stood in the way of a future discharge of that which they deemed a public duty. This case is not within the exception created by the decision in *Burnham's* case. The board of railroad commissioners have no further duties to perform in the premises. Their duty ended with the issue of the certificate, which the Appellate Division reversed and annulled. Having made the determination that the public convenience and a necessity required the construction of the Goshen railroad, they had no other or greater interest in its being sustained than has a court in having an order or judgment made by it upheld.

Our examination of the record leads to the conclusion that upon the merits the order of the Appellate Division is right, and should be affirmed.

Haight, J. (dissenting). The Erie Railroad Company is a corporation operating a railroad between New York, Buffalo, Chicago, and other points in the west. Its main line runs through the village of Goshen, crossing numerous streets at the surface upon a steep grade with sharp curves, and its heavily-laden trains require the services of an additional engine in order to pass through the village. In order to save time and expense in the running of the trains and to enable the company to compete with other trunk lines from the west, the officers of the Erie Company devised a plan for a cut-off road running partly outside of the village and partly within the corporate limits, but beyond the thickly-settled portions, of about two and three-quarters miles in length over which they could run their through freight trains, thereby relieving the village of the noise, smoke and delay at street crossings occasioned by the taking of trains through the village, and at the same time save to the company the expenses of maintaining a pusher engine, as well as considerable time. For the purpose of accomplishing this result, the Erie officials organized a new corporation under the name of Goshen Railroad Company, designed, as they say, as an auxiliary company to the Erie for the purpose of building the proposed new road. The reason for this, as given by their counsel, is, that the Erie road is mortgaged to the full extent of its value and that company was unable to raise the necessary money to build the new road; that the Goshen Company could mortgage the new road separate from the Erie's and thereby raise the necessary money for its construction, and then rent it to the Erie Company for a sufficient sum to pay the interest on the mortgage.

The Goshen Railroad Company, having been organized and conformed to the preliminary requirements of the statute, applied to the railroad commissioners for a certificate required by section 59 of the Railroad Law. The railroad commissioners thereupon inspected the old road and the location of the proposed new road, and then, upon notice given, a public hearing was held for those opposing the granting of the certificate. Upon such hearing the relators appeared by counsel

and produced witnesses and gave evidence in opposition to the claim of public necessity contended for by the railroad company. After hearing and considering the evidence, the railroad commissioners issued the certificate prayed for. The relators then applied for a writ of certiorari, and the same having been allowed, and the Goshen Railroad Company brought in as a party, the case was brought to a hearing in the Appellate Division and resulted in the order from which this appeal was taken.

We do not regard the fact as to whether the proposed road is a public convenience and necessity as properly before us; indeed, we do not understand that the Appellate Division has reversed upon the ground that the new road was not a public convenience and necessity. The prevailing opinion written seems to indicate that the court reached the conclusion that the Goshen corporation was unnecessary and not the proposed road; that the new corporation was considered to be a parasite on the old and that the Erie Company could construct its own cross-cut road and thereby secure all of the good to be accomplished and rectify all of the evils complained of. We shall not stop to consider all of the questions discussed, not even the question as to whether a new corporation was proper, or whether the commissioners had any jurisdiction to determine that question; for to our minds there are other questions which we think dispose of this case before reaching those alluded to.

Section 2127 of the Code of Civil Procedure provides that " An application for the writ must be made by, or in behalf of, a person aggrieved by the determination to be reviewed; must be founded upon an affidavit, or a verified petition, which may be accompanied by other written proof; and must show a proper case for the issuing of the writ."

Section 2122, so far as is material, provides that "Except as otherwise expressly prescribed by a statute, a writ of certiorari cannot be issued, in either of the following cases: 1. To review a determination which does not finally determine the rights of the parties, with respect to the matter to be reviewed."

It will at once be seen that a review by certiorari can only be had by a person aggrieved by the determination of the commissioners, and that it cannot be had by such a person, unless it finally determines his rights with respect to the matter to be reviewed.

The relators are the owners of lands through which a portion of the new road is proposed to be built. Section 59 of the Railroad Law was designed, as has been held, to prevent destructive competition and the levying of tribute upon existing roads, by requiring, as a condition precedent to the right to build, a certificate from the railroad commissioners of public necessity and convenience. No notice of the application for the certificate is required to be given to the owners of the lands through which the company design to construct its road. The statute does not specify the manner in which the commissioners shall determine the question ; their usual practice is to inspect the proposed route, and then make public inquiry in the locality chiefly affected, and upon the information so derived, determine the question of public necessity and convenience. The landowners are not necessary parties to the proceedings, and none of their rights are affected. After the granting of the certificate, the landowners have left unimpaired all the rights and remedies given them by the Railroad Law ; they may move to change the route, and in case condemnation proceedings are instituted, they may answer, putting in issue the validity of the petitioner's organization or that the road was for a public use or necessary for such use, and have those issues regularly tried and determined in a court of equity. (Code C. P. secs. 3360, 3365, 3367.) The contention on behalf of the relators, that the courts will be influenced in the determination of that issue by the certificate given by the commissioners, is hardly worthy of an answer. It is sufficient to say with reference thereto, that it is the duty of the courts to determine the question from the evidence produced upon the trial, in the same way other questions of fact are determined in the trial of other cases.

In *Matter of Niagara Falls and Whirlpool Railway Com-*

216   People ex rel. Steward *v.* Railroad Comrs.   [Oct.,

Dissenting opinion, per Haight, J.   [Vol. 160.

*pany* (108 N. Y. 375) it was held that a railroad corporation, seeking to take property *in invitum* for the purposes of its road, must be able to show, first, a legislative warrant, and second, if the right is challenged, that the particular scheme in which it is engaged is a railroad enterprise within the true meaning of that term, or that the business it is organized to carry on is public, and that the taking of private property for its purposes is a taking for public use. That the question as to whether the uses are, in fact, public so as to justify such taking is a judicial one to be determined by the court. (See, also, *In the Matter of Split Rock Cable Road Company*, 128 N. Y. 408.)

It will at once be seen that certiorari is not the remedy provided by the statute for the relators, and that a remedy has been provided in which the question raised by them upon this review may be tried out and determined in a proceeding in which they are necessary and proper parties. It will also be seen that a review by certiorari does not necessarily finally determine the rights of the relators, for if they are unsuccessful upon this review, they may again litigate the same question when their land is sought to be taken.

It is contended that the case of *People ex rel. Loughran v. Railroad Commissioners* (158 N. Y. 421) is an authority for the allowance of a writ in this case. We do not think so; that case arose under a very different statute. The railroad company sought permission from the railroad commissioners to abandon and remove a passenger depot in the city of Kingston. The relators in that case claim to have contributed money for the erection of the depot at that place. The Railroad Law gave them no other remedy. The consent of the commissioners to the removal of the depot was the end of the proceeding; all that remained to be done was to tear down the building, which the company was at liberty to do at any time after procuring the consent of the commissioners. This case is very different; after procuring the certificate, the company have to secure their right of way, and this has to be accomplished by another proceeding in

court in which, as we have shown, the rights of all the parties must be determined by the courts, and not by a board of commissioners, unless the landowners see fit to make voluntary agreements with the railroad company.

Our conclusion is, that the writ of certiorari in this case was prohibited by the provisions of section 2122 of the Code of Civil Procedure. The order of the Appellate Division should be reversed and the writ dismissed, with costs.

GRAY, O'BRIEN and VANN, JJ., concur with PARKER, Ch. J., for affirmance; BARTLETT and MARTIN, JJ., concur with HAIGHT, J., for reversal.

Order affirmed.