1899.]  People ex rel. Loughran v. Railroad Comrs.  421

N. Y. Rep.]                Statement of case.

The People of the State of New York ex rel. Robert Loughran et al., Appellants, v. The Board of Railroad Commissioners of the State of New York, Respondent.

1. CERTIORARI — FUNCTION OF COMMON-LAW WRIT.  A common-law writ of certiorari may be issued to review the judicial determinations of inferior tribunals and officers acting judicially under the authority of a · statute, to correct errors of law affecting the property or rights of the parties.

·2. RAILROADS — CONSENT BY RAILROAD COMMISSIONERS TO DISCONTINUANCE OF STATION, INVOLVING JUDICIAL ACTION.  The state board of railroad commissioners acts judicially in consenting, under the power conferred upon it by the Railroad Law (L. 1890, ch. 565, amd. L. 1892; ch. 676), to the discontinuance of a station by a railroad company, as a result of a contested proceeding, to which the interested citizens, as well as the company, were parties, and which involved the determination, by the board, of the question of fact between convenience to the public and inconvenience to the company, and the exercise of judgment upon the evidence in determining whether the consent should be given or not.

3. JUDICIAL ACTION OF RAILROAD COMMISSIONERS SUBJECT TO REVIEW BY CERTIORARI.  The proceedings of the state board of railroad commissioners in consenting, through the exercise of judicial action, to the discontinuance of a station by a railroad company, are subject to review by certiorari.

4. RAILROAD COMMISSIONERS WITHOUT POWER OVER CONTRACTS — CONTRACT AS EVIDENCE.  Although the state board of railroad commissioners has no power to enforce or set aside contracts, it may properly receive in evidence, in a contested proceeding for consent to discontinue a station, a contract between certain citizens and the railroad company, under which subscriptions to the station building and approaches were made and paid in consideration of the company's stopping its trains there for passenger purposes.

5. APPEAL — EFFECT OF UNANIMOUS AFFIRMANCE OF DETERMINATION INVOLVING QUESTION OF FACT.  Where a determination made by the state board of railroad commissioners, involving a question of fact, has been affirmed unanimously by the Appellate Division on certiorari, the Court of Appeals has no power to review, when no question is raised that is not necessarily determined by the decision of the question of fact.

*People ex rel. Loughran v. Bd. R. R. Comrs.*, 32 App. Div. 158, affirmed.

(Argued March 1, 1899; decided March 14, 1899.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered

January 9, 1899, affirming a determination of the railroad commissioners, granting leave to the Ulster & Delaware Railroad Company to abandon Fair street station in the city of Kingston.

This proceeding was initiated by the petition of three residents and freeholders of the city of Kingston to review by certiorari the proceedings and determination of the board of railroad commissioners in relation to the abandonment of Fair street station in that city.

About the 6th of July, 1897, the relators presented their petition to the board of railroad commissioners, alleging that the Ulster & Delaware Railroad Company proposed to abandon said station in violation of an agreement, and in disregard of the convenience of the public, and asking the board to examine into the facts and prohibit the threatened abandonment.

A few days later, the railroad company presented its petition to said board asking leave to abandon said station. Answers having been interposed to both of these petitions, the proceedings were consolidated and heard as one. The commissioners made a personal view of the locality affected, received the petitions of many individuals, both for and against the proposed change, swore and examined numerous witnesses produced by either side and finally granted the application of the railroad company.

The return shows that the tracks of the Ulster & Delaware Railroad Company extend from the city of Kingston, in the county of Ulster, to the village of Stamford, in the county of Delaware, a distance of seventy-four miles. The city of Kingston, shaped somewhat like a dumb-bell, embraces the former village of Rondout on the Hudson river and the former village of Kingston, connected by a long, narrow strip of territory occupied by buildings. The portions which formerly were villages are centers of population and of business, and since the construction of the railroad there has been one station at Rondout to accommodate the people living there, and another for a time at Higginsville, but in 1882 changed

to Fair street, to accommodate those residing in the former village of Kingston. The change from Higginsville to Fair street was the result of an agreement made in 1881 between Thomas Cornell, as president of the railroad company, and a committee of citizens, of which the petitioners herein were members. That agreement was forthwith embraced in the following heading to a subscription paper, to wit: "Whereas, the Hon. Thomas Cornell, president of the Ulster & Delaware Railroad Co., has assured a committee that if the people would erect a depot building at the foot of Vorhees lane, or at a point near the head of Fair street, he would cause the trains of said road to stop at said depot for passenger purposes; in consideration thereof, we, the undersigned, do hereby agree to pay the sums set opposite our respective names for the purpose of erecting a depot building at the head of Fair street, and for constructing the roadway and other necessary work to complete the extension to the railroad at that point." This paper was signed by forty-seven persons and firms who subscribed, with one cash subscription, the sum of $3,800, of which $3,345 was collected and used for the purpose of extending Fair street to the railroad and erecting a depot at that point. Land was conveyed to the railroad company for a depot building and grounds with a provision in the deed that when the land ceased to be used for that purpose it was to revert to the grantors. Subsequently the general action of the officers and directors of the railroad company, without special reference to the Fair street station, "was approved, ratified and confirmed" at an annual meeting of the stockholders.

For fifteen years after the construction of the depot, pursuant to said agreement, the passenger trains of the railroad company stopped at the Fair street station. This was an accommodation to a large number of people residing in the old village of Kingston, and to a still larger number residing in various towns of Ulster and Delaware counties. This station was within eight hundred feet of the court house, clerk's office, surrogate's office, five banks, many hotels, schools

and places of business. There were, however, two other stations within the corporate limits of the city, one at the terminus in Rondout and the other at the junction of the Ulster & Delaware with the West Shore and the Walkill Valley railroads, where there is a union depot. The station at Rondout is nearly three miles from the center of the former village of Kingston, and the union depot is about one mile therefrom, but is connected therewith by a street railroad. Neither of these stations accommodated many thousands of people, who were in the habit of getting on and off the cars at the Fair street station. Those from the country who wished to reach the court house or vicinity would be compelled, without the Fair street station, to pay more fare and stop at least a mile farther from the place where they wanted to go, while the inhabitants of the former village of Kingston would have to go a mile out of their way to the union depot and pay fare on the railroad in order to ride back again to a point near their own homes, where for years they had been accustomed to take the cars. The aggregate loss of time and money each year would necessarily be large when the number of people thus inconvenienced is considered. The inconvenience to the railroad company is the expense of maintaining the Fair street station, which has become somewhat out of repair, and the interference with its business, especially the summer traffic, which is the chief part of its passenger business, by stopping its trains at Fair street.

The railroad commissioners granted the application of the railroad company, and gave as their main reason that a small local railroad should not be burdened with the expense of maintaining three stations for the use of a small city.

The determination of the commissioners was affirmed by the Appellate Division, unanimously, and the relators appeal to this court.

*G. D. B. Hasbrouck* for appellants. Between the relators Loughran and Wolven and the citizens they represent and the Ulster & Delaware Railroad Company, there existed a valid

binding contract for the stopping of trains at the Fair street station, which, at the time of the consent of the railroad commissioners to abandon the same, had not been abrogated or impaired. (*Joy* v. *S. L. R. R. Co.*, 138 U. S. 1; *Peabody* v. *Speyers*, 56 N. Y. 230; *A. Co.* v. *Albany*, 55 N. Y. 495; *Dutch* v. *Mead*, 4 J. & S. 427; *Lawrence* v. *S. L. R. Co.*, 36 Hun, 468; *Conger* v. *N. Y., W. S. & B. R. R. Co.*, 120 N. Y. 29; *People* v. *R., W. & O. R. R. Co.*, 103 N. Y. 107; 1 Wood on Railroads [4th ed.], 608; *Jessup* v. *G. T. R. Co.*, 28 Grant's Ch. [N. C.] 583; *T. & P. R. Co.* v. *Marshall*, 136 U. S. 393.) The railroad commissioners are possessed of no power or authority to impair in any manner that contract. (*People* v. *U. & D. R. R. Co.*, 128 N. Y. 240; *State* v. *N. H., etc., R. R. Co.*, 43 Conn. 351.) The case is reviewable on the facts in the Court of Appeals. (L. 1890, ch. 565, §§ 34, 161, 162; *Pearson* v. *Lovejoy*, 53 Barb. 407; *Wheeler* v. *Winn*, 53 Penn. St. 122; *Converse* v. *Burrows*, 2 Minn. 229; *Matter of U. F. Co.*, 98 N. Y. 149; *People ex rel.* v. *Supervisors*, 139 N. Y. 530; *Hill* v. *Grange*, 1 Plow. 178; Suth. on Stat. Cons. 529.) Certiorari was the proper remedy where mandamus could not be used. (L. 1890, ch. 565, §§ 161, 162; *People ex rel.* v. *Comrs.*, 32 App. Div. 182; Code Civ. Pro. § 2140; *People ex rel.* v. *Jones*, 112 N. Y. 597; *People ex rel.* v. *French*, 119 N. Y. 502; *People ex rel.* v. *Police Comrs.*, 13 App. Div. 69; *People ex rel.* v. *Zoll*, 97 N. Y. 203; *People ex rel.* v. *Smith*, 45 N. Y. 772; *People ex rel.* v. *Bd. of Assessors*, 40 N. Y. 154; *People ex rel.* v. *Bd. of Police*, 39 N. Y. 506; *People ex rel.* v. *Bd. Suprs.*, 51 N. Y. 442; *People ex rel.* v. *Allen*, 52 N. Y. 538.) The railroad commissioners erred in refusing to hold that the public convenience to be consulted was that adjacent to the line of the railroad and not that of through traffic. (*Matter of A., J. & G. R. R. Co.*, 86 Hun, 586; *Matter of N. H. R. R. Co.*, 76 Hun, 76; *People ex rel.* v. *Bd. R. R. Comrs.*, 4 App. Div. 259; *Matter of L. L. R. R. Co.*, 11 App. Div. 237.) The fact that there was a personal inspection of the line by the railroad commissioners should have no weight.

54

(*People* v. *D. & H. C. Co.*, 32 App. Div. 120 ; L. 1890, ch. 565, § 162.)

*Lewis E. Carr* for respondent. No question on the facts is open to consideration in this court because the decision of the Appellate Division, that the facts justified the decision made, is conclusive here. (Code Civ. Pro. § 191, subd. 4; *People ex rel.* v. *Barker*, 152 N. Y. 417; *Szuchy* v. *H. C. & I. Co.*, 150 N. Y. 219; *Matter of Atty.-Gen.*, 155 N. Y. 442.) The action and decision of the board of railroad commissioners as to the Fair street station in the city of Kingston were in the discharge of an administrative function, and so are not open to review by certiorari. (Code Civ. Pro. § 2120; L. 1890, ch. 565, §§ 34, 162; L. 1892, ch. 676; *People ex rel.* v. *Walter*, 68 N. Y. 403; *People ex rel.* v. *Board of Comrs.*, 97 N. Y. 37; *People ex rel.* v. *Bd. Suprs.*, 131 N. Y. 468; *People ex rel.* v. *Bd. Suprs.*, 153 N. Y. 370; Elliott on Railroads, § 675; *People ex rel.* v. *Waters*, 4 Misc. Rep. 1; *Kanouse* v. *Martin*, 3 Sandf. 653; *People* v. *N. Y., L. E. & W. R. R. Co.*, 104 N. Y. 58; *People ex rel.* v. *Chapin*, 106 N. Y. 265; *People* v. *U. & D. R. R. Co.*, 128 N. Y. 240; *People ex rel.* v. *R. R. Comrs.*, 32 App. Div. 179.) The alleged contract as to stopping trains at Fair street does not aid the relator's case or make the action of the commission reviewable by certiorari. (*People ex rel.* v. *Overseers*, 44 Barb. 467; *People ex rel.* v. *Bd. Suprs.*, 15 Wend. 198; Code Civ. Pro. §§ 2121, 2122; *People* v. *R., W. & O. R. R. Co.*, 103 N. Y. 95; *People ex rel.* v. *Betts*, 55 N. Y. 600; *T. & P. R. Co.* v. *Marshall*, 136 U. S. 393; *State* v. *N. H., etc., R. R. Co.*, 43 Conn. 351.)

Vann, J. Authority for the discontinuance of the station in question is found in the Railroad Law, which provides that "no station established by any railroad corporation for the reception or delivery of passengers or property, or both, shall be discontinued without the consent of the board of railroad commissioners first had and obtained." (L. 1890, ch. 565, as amended by ch. 676, L. of 1892, § 34.)

It is further provided by section 157 of the same law, that "the board shall have power to administer oaths in all matters relating to its duties, so far as necessary to enable it to discharge such duties, shall have general supervision of all railroads and shall examine the same and keep informed as to their condition, and the manner in which they are operated for the security and accommodation of the public and their compliance with the provisions of their charters and of law."

The principle to govern the action of the commissioners, as laid down in section 161, is that if any change "in the mode of operating the road or conducting its business, is reasonable and expedient in order to promote the security, convenience and accommodation of the public," they are required to give orders accordingly, and it is made "the duty of the corporation, person or persons owning or operating the railroad to comply with such decisions and recommendations of the board as are just and reasonable. If it fails to do so the board" is directed to "present the facts in the case to the attorney-general for his consideration and action, and" also to "report them in its annual or in a special report to the legislature."

By section 162 power is conferred upon the Supreme Court at Special Term, "in its discretion, in all cases of decisions and recommendations by the board which are just and reasonable to compel compliance therewith by mandamus, subject to appeal to the General Term and the Court of Appeals, and upon such appeal, the General Term and the Court of Appeals may review and reverse upon the facts as well as the law."

By other sections authority is conferred upon the board to act in relation to questions arising between intersecting roads, the precedence of trains thereat, altering or reducing the rate of freight or fare, the erection of safeguards, intersecting switches and signal devices, consent to the construction of new railroads, the method of crossing streets by a new railroad or the crossing of existing railroads by new streets, the consolidation and lease of parallel lines, the change of motive power by street surface railroads and the like. (Railroad Law, §§ 35,

428 People ex rel. Loughran *v.* Railroad Comrs. [Mar.,

Opinion of the Court, per Vann, J.　　　　[Vol. 158.

36, 38, 49, 50, 55, 57, 59, 59a, 60, 61, 62, 63, 66, 67, 68, 69, 80, 83, 100, 103, 150 to 166 inclusive.)

When the orders of the board relate to the giving of permission to do or refrain from doing certain acts, nothing further is required to make the order effective, but when the orders are affirmative requirements directing certain things to be done they are in the nature of recommendations which may be enforced, if reasonable and expedient in order to promote the convenience of the public, by the Supreme Court at Special Term, subject in such cases to the right of appeal in the usual way, expressly conferred. Such appeals, however, are from the determination of the Special Term and not of the commissioners. No right to review the determinations of the commissioners is expressly conferred by statute, and the respondent insists that the action and decision of the board as to the Fair street station were in the discharge of a legislative or ministerial function and hence not open to review by certiorari.

A common-law writ of certiorari may be issued to review the judicial determinations of inferior tribunals and officers acting judicially under the authority of a statute, to correct errors of law affecting the property or rights of the parties. (*People ex rel. Corwin* v. *Walter*, 68 N. Y. 403, 408; *People ex rel. Burnham* v. *Jones*, 112 N. Y. 597; *People ex rel. Citizens' Gas Light Company* v. *Board of Assessors*, 39 N. Y. 81, 88; *People ex rel. Bodine* v. *Goodwin*, 5 N. Y. 568; *Wildy* v. *Washburn*, 16 Johns. 49; *Star* v. *Trustees of Rochester*, 6 Wend. 564.) In consenting to the discontinuance of the station in question we think the board of railroad commissioners acted judicially. As was said in *People* v. *N. Y., L. E. & W. R. R. Co.* (104 N. Y. 58, 65), "By creating, the statute recognizes the necessity for, such a tribunal to adjust conflicting interests and controversies between the people and the corporation. It has clothed it with judicial powers to hear and determine, upon notice, questions arising between these parties." The action of the board clearly was not legislative, for it was not in the

nature of making a law but of determining a controversy. It was not ministerial, because the commissioners were not required by law to do a specified act in a specified way upon a given state of facts without regard to their own judgment as to the propriety of the act, and with no power to exercise discretion. (*People ex rel. Harris* v. *Commissioners*, 149 N. Y. 26.) It was, however, judicial, because the law impliedly required them to decide a question of fact and to exercise their judgment upon evidence in determining whether the consent should be given or not. The question was between the convenience of the public patronizing the station and the inconvenience to the railroad company in maintaining the station and stopping its trains thereat. While the statute mentions the public convenience only, in a broad sense, the convenience of the public includes the convenience of the railroad company also, because the real interest of the public cannot be promoted by imposing an unreasonable inconvenience upon the railroad. The question involved a wide range of investigation and was the subject of much conflicting testimony. A great variety of facts was proved tending strongly to show that the public convenience would be greatly promoted by the continuance of the station. Facts were also proved, tending to show inconvenience and expense to the railroad unless consent should be given to the discontinuance of the station. The board had express power to subpœna witnesses, administer oaths and to conduct an investigation not only judicial in form, but in nature, and upon the evidence taken as well as upon their view of the locality to decide whether, under all the circumstances, the prayer of the citizens or of the corporation should be granted. (Railroad Law, § 157.) While there is no express provision in the statute for notice to the citizens interested, there is an express provision for notice to the company, and, after the consolidation, the citizens were parties to the proceeding by virtue of their own prior petition. The board could not proceed upon the petition of the citizens without notice to the corporation, and it wisely concluded that it should not proceed upon the petition of the corporation with-

out notice to the citizens. We think that the proceedings of the commissioners were subject to review by certiorari.

The board properly received the contract between certain citizens and the railroad company in evidence, but it had no power to enforce that contract or set it aside. Its jurisdiction does not extend to the enforcement of contracts as such or to the award of relief for their violation. That power can be exercised only by the courts. Any attempt by the commissioners to enforce the contract, as a contract, would have been illegal, and their omission to enforce it is no bar to an action by the parties aggrieved in the proper court. They do not constitute a court, although in many respects they act as judges. They have no inherent authority, but depend for their power upon the legislature, which has not attempted to invest them with the function of granting or withholding relief based upon contractual obligations.

As has already been said, the determination made by the commissioners involved the decision of a question of fact, which, under the Constitution, we have no power to review, as the affirmance by the Appellate Division was unanimous. (*People ex rel. Manhattan R. R. Co.* v. *Barker,* 152 N. Y. 417.) Upon the merits there is no question of law before us. No question is raised that is not necessarily determined by the decision of the question of fact. While the learned commissioners may not have attached sufficient importance to the public convenience as compared with the corporate inconvenience, we cannot review their decision in that regard, but must accept it, approved as it has been unanimously by the Appellate Division, whether we approve of it or not.

The order should be affirmed, but without costs.

All concur.

Order affirmed.