ILLINOIS CENTRAL RAILROAD COMPANY *v.* R. E. DODD ET AL.

[61 South. 743.]

1. COURTS. *Supreme Court. Appellate jurisdiction. "Judicial powers." What constitutes. Judicial decision. Constitution 1890, section 146. Art. 3, par. 3, Code 1906, section 4836. Laws 1908, chapter 86.*

Under Constitution 1890, section 146, so providing, the supreme court has such jurisdiction as properly belongs to a court of appeals, which includes only such as is of a revisory character, and necessarily implies that the matter revised must be a judicial decision, rendered by a tribunal clothed with judicial power.

2. SAME.

"Judicial decision" is the application, by a court of competent jurisdiction, of the law to a state of facts proved, or admitted to be true, and a declaration of the consequences which follow.

3. SAME.

"Judicial power" of courts includes, among other things, the power to hear and finally determine controversies between adverse parties.

4. SAME.

Appellate jurisdiction as used in Constitution 1890, art. 3, paragraph 3, providing that the supreme court shall have such "appellate jurisdiction" as may be provided by law, means to revise and correct the proceedings in a cause already instituted, and necessarily implies that the subject matter has already been instituted in and acted on by some other court, whose judgment or proceedings are to be revised; and such other court must have been clothed with judicial authority and acting in a judicial capacity.

5. COURTS. *What constitutes. Judicial decisions. Code 1906, section 4836. Laws 1908, chapter 86.*

Under the powers granted the railroad commission by Code 1906, section 4836; it is a mere administrative agency, having nowhere been given the power to apply the law to a state of facts and to make a final declaration of the consequences which follow, all of its orders being subject to review by the courts, the duties of such board of commissioners is therefore not judicial and it is not a tribunal of that character from which the legislature is authorized to grant appeals direct to the supreme court and hence Laws 1908, chapter 86, granting such appeals is invalid.

APPEAL from the Railroad Commission of Mississippi.

Petition by R. E. Dodd to the Mississippi Railroad Commission for the establishment of a crossing over the right of way of the Illinois Central Railroad Company. From an order establishing the crossing the railroad appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant.

Chapter 86 of the Laws of 1908, page 71, provides that whenever the railroad commission shall make an order, "the validity of which shall be disputed upon the ground that the commission was without power to make it, or

whenever the commission shall refuse to make an order asked for upon the ground that it was without power to make it, any person feeling aggrieved by the action of the commission may appeal therefrom directly to the supreme court. Upon such appeal the supreme court shall decide nothing except as to the power of the commission in the premises, and all other questions which may be involved shall remain unaffected thereby.'' See, also, section 4890, Code 1906.

In the first place, we desire to call the court's attention to the fact that this right of appeal from the order of the railroad commission is not a new law. It is a right which seems to have been generally granted in many states. In this connection we call attention of the court to 33 Cyc. 52 dealing with railroad commissioners, in which it says: ''In some cases the statute gives the right of appeal from orders of the railroad commissioners, or authorizes the railroad company to bring an action against the commissioners to have the regulation, order or finding vacated, and right of appeal from the judgment there rendered to the supreme court or appellate court.'' If the court will examine Cyc. and the annotations to Cyc. on this subject from 1901 to 1912, it will find that the right of appeal from an order of the railroad commission is quite generally given throughout the states.

We here wish to emphasize the broad distinction between the exercise by the supreme court of the review of an administrative or legislative function conferred upon the railroad commission, and the review by the appellate court of a question of a judicial nature. The legislature has not granted, and could not grant, an appeal from the order of the railroad commission to the supreme court in a matter purely administrative; that is, involving a question requiring the best judgment and discretion of the commission as to whether it is good or bad policy. Such questions are not judicial in nature, but are committed to the judgment of the commission, and cannot

be reviewed on appeal, unless they become unreasonable. But there is no such question involved here.

Our statute simply provides that on appeal to the supreme court from an order of the railroad commission, the sole question shall be as to the power of the commission—as to whether they have the legal right to do as they have. Surely, this presents a judicial question.

At this point we invite the court's attention to another point, this: That the organization of the railroad commission and the granting to it of certain judicial functions, is the organization of an inferior court within the meaning of section 172 of the Constitution; the Constitution fixes the jurisdiction of all the courts named therein; and, of course, the legislature cannot take away from any of these courts the powers conferred by the Constitution; but section 172 provides that the legislature shall, from time to time, establish other inferior courts, etc. The legislature cannot confide to the railroad commission any judicial jurisdiction which has been conferred by the Constitution upon any other court of the state. The jurisdiction confided to the railroad commission is such as the statute gives it; and the statute gives it no power to determine any case or controversy now determinable by any one of the courts named in the Constitution. We hold, therefore, that when the legislature created the commission as an inferior court, conferring upon it certain judicial functions, it had the right to say that an appeal should be granted from this court so created by it; and it had a right to name the court to which such appeal should be taken.

It is true that section 144 of the Constitution vests the judicial power in a supreme court, and such other courts as are provided for therein; and it is also true that section 146 of the Constitution limits the jurisdiction of the supreme court to such things as properly belong to a court of appeals.

We desire to call the attention of the court to the fact that in 56 So. 670, in the case of *Railroad Co.* v. *City of*

*Charleston*, this court sustained a motion to dismiss an appeal, not upon the ground that the act authorizing it was unconstitutional, but upon the ground that the bill of exceptions had not been perfected within the proper time. This case, in effect, approved the right of the legislature to authorize by law an appeal direct from the order of the commission.

We also call the court's attention to the fact that in the case of the *Mississippi Railroad Commission* v. *Y. & M. V. R. R. Co.,* 56 So. 663, this court has again expressly approved the right to appeal, from an order of the railroad commission, as provided in section 2890 of the Code of 1906, Laws of 1908, 71. In other words, we have been operating under section 4890 of the Code of 1906, and the Laws of 1908, granting the right to take an appeal from the order of the railroad commission to the supreme court since 1906, and this is the first effort to have this law declared unconstitutional.

The attorney-general calls our attention to several sections of the Constitution, which he claims to be violated by the statute granting an appeal from the order of the railroad commission to the supreme court. His idea seems to be that if the railroad commission has not sufficient judicial power to render a judgment which is final, and which finally disposes of the matter, this prevents an appeal from any order which they make, for any reason, because he contends that they are not acting in any judicial function. We will undertake to show a little later that there is nothing in this contention.

We hold that when the Constitution so provides, and when the statutes of the state give to the railroad commission certain judicial duties, it is within the province of the legislature to authorize an appeal from this inferior court, established by it, to the supreme court, as to all matters which are in their nature judicial; and when it comes to the construction of a statute and the determination as to whether certain powers have been conferred

by law upon the commission, surely it cannot be said that this question is other than judicial. This does not confer original jurisdiction on the supreme court. The controversy begins before the commission and the railroad commission itself has to determine whether it has this power, or not, as the case may be. And however it may be decided, an appeal is granted to the supreme court for the purpose of determining whether the power is given to the commission by the statute. Clearly, this is a judicial question; the mere fact that an appeal is allowed gives no ground for avoiding this act; and it cannot be argued that the supreme court is going beyond its jurisdiction merely because an appeal is allowed from the holding of the commission, unless the question submitted to the court is one, the decision of which does not properly belong to a court of appeals. Construction of statutes, declaring of the jurisdiction and rights of so important a body as the railroad commission, involve judicial questions. For what is meant by original jurisdiction see Words and Phrases, vol. 6.

We do not care to follow the various decisions cited by the attorney-general in his brief, for the reason that we do not think they apply. In the *Hayburn case,* 2 Dallas, the court held that there was no judicial function exercised; in the case of 13 Howard, the court merely held that the Supreme Court of the United States could not exercise powers not judicial. In all the cases cited by the attorney-general the holdings have merely been to the effect that appellate courts would not take control of questions not judicial in nature.

In 78 N. E. 338 the same point seems to have been made as in the brief of the attorney-general. It appears that the Constitution of Indiana declares, as does ours, that, "The judicial power shall be vested in the supreme court, and such other courts as the general assembly may establish." And it was held that the legislature might invest the appellate court with such jurisdiction as it sees

fit, only providing that the duty required is a judicial
duty; and in determining whether a rate fixed by the com-
mission has been established in due form of law, and
under a valid law, and by a valid commission, it was held
that the appellate court was exercising a judicial au-
thority.   To the same effect is the case of *State* v. *John-
son,* 49 L. R. A. 662, relied upon by counsel for motion.
In other words, the only cases in which it has been held
that these appeals could not be granted have been where
appeals carried to the appellate court some question to be
decided, not of a judicial character, which is not true of
the instant case.   The right of appeal granted by our
statute carries to the supreme court only questions of a
judicial character, and none else.

In the case of *Tyson* v. *Washington County,* 12 L. R. A.
350, the court held that the division of power between the
several branches of the state government, by the Con-
stitution of Nebraska, is comprehensive and final; and
the legislature could neither add to, nor subtract from,
the classes of cases or questions with which the courts are
entitled to deal.   It held that when a drainage ditch will
be conducive to the public health, convenience or welfare,
or whether the route thereof is practicable, are questions
of governmental or administrative policy, and jurisdic-
tion over them, judicial or otherwise, could not be con-
ferred upon the courts by statute.   But in this case, the
court says on page 354:   ''It is competent for the legis-
lature to prescribe whatever mode of procedure that may
seem fit for bringing judicial questions before the court
for determination, or for the multiplication of cumulative
remedies; and a majority of the court are of the opinion
that so much force and effect can be given to the first and
second subdivisions of article 15 of the statute, *supra,*
that when it shall have been made to appear upon the
face of the record that the board is attempting or threat-
ening to proceed in usurpation or excess of powers, viz.,
without jurisdiction of the subject-matter or in fraudu-

lent or oppressive exercise of its authority, the court will, upon appeal, obtain jurisdiction of those questions which are judicial in their nature.''

In other words, there is not a single authority holding that when an appeal is granted from an inferior court to the supreme court, in cases where the Constitution of the state does not require the case to be taken, on appeal, to some other court, and the questions involved are judicial questions, that this makes the act unconstitutional. That the commission is an inferior court, see case in 85 Miss. 772.

The railroad commission is a creature of statute; its powers are built up under the statutes. If the statute shall undertake to give it final decision on matters which are brought before it, this in itself must make the act unconstitutional. But when it confers upon it powers of an administrative and judicial character, and allows appeals to the supreme court, from judicial questions, we cannot understand how this can be unconstitutional; nor can we determine for ourselves what sections of the Constitution are violated by it.

*Geo. H. Ethridge,* assistant attorney-general, for appellee.

I desire to call the court's attention at the outset to the machinery provided by law, and intrusted to the railroad commission, and the scheme and purpose for which said commission is created. By section 186 of the state Constitution it is provided that the legislature shall pass laws to prevent abuses, unjust discrimination, and extortions in all charges of express, telephone, telegraph, sleeping car, and railroad companies, and shall enact laws for the supervision of railroad, sleeping car, telephone, telegraph, and express companies, and other common carriers of this state, by commission, or otherwise, and shall provide adequate penalties to the extent if necessary for this purpose of a forfeiture of their franchises. It will

be seen from this section that the commission is a body authorized to be created for the purpose of exercising legislative powers. The legislature may regulate these matters entrusted to the commission under the present law by itself or of itself, should it see proper to do so, and the powers conferred by law upon the commission, are very largely, if not entirely, legislative in their character.

The powers of the commission, conferred by chapter 139 of the Code of 1906, on the railroad commission, are to regulate and control matters of fixing tariffs and rates, and general regulations for the government of common carriers of the state; these by general laws providing penalties by the legislature, and entrusting the commission with the duty of showing that the rates are fair and just, and entrusting to the commission the power to make or change any rate.

Section 4842 of the Annotated Code of 1906 requires the tariffs of the railroads to be submitted to the commission, and authorizes and empowers the commission to fix rates. This is distinctly a legislative power in its nature, and has often been exercised by the legislature itself, and has never been disputed to be a legislative function.

Section 4843 of the Code gives the commission power to fix charges and supervise all persons, natural or artificial, who may be engaged in the business of express, telegraph, telephone, sleeping car companies or service associations.

Section 4849 of the Code authorizes the commission to hear complaints with reference to any schedule or tariff rate, and to deal with and regulate the same, and the commission is charged with other matters such as the location of proper stations, houses, passenger depots, depot facilities, regulation of how rooms shall be kept, and the making and promulgation of general regulations which the common carriers of the state are to observe and to be governed by.

By section 4838 of the said chapter of the Code of 1906 the commission may apply to any of the circuit or chancery courts for the enforcement of their orders, and the courts named, that is, the circuit and chancery courts, have express power by this law to grant aid or relief in such cases as may be necessary.

By section 4833 and section 4834 of the Code of 1906 the kind of notices to be given for hearings before the commission are provided, and it will be seen from these sections that it does not require the same kind of notice required by law and by the Constitution for judicial hearings. Mere mailing of notices, postage prepaid, addressed to the common carrier, or to the chief or other officer, thereof, at its principal place of business, or service by an officer, shall be a sufficient notice.

It will be found from an inspection of all the sections dealing with this that the railroad commission itself is nowhere empowered to enforce its own orders except by a suit in a court of competent jurisdiction. In other words, the commission occupies in all cases the position of a party to a suit, and not the position of a court and it nowhere has been given the power to issue any writ or judicial process for the enforcement of its orders.

By section 4883, it is provided that penalties for violating any order of the commission, or the provisions of this charter, shall be recovered by action in the name of the commission in the county where such failure may occur or overcharge may be made. Such action shall be instituted by the attorney-general or the district attorney in his district, and it may be shown in defense in any such action that the order as made is unreasonable, and in the case of the *Western Union Telegraph Company* v. *Railroad Commission,* 74 Miss. 80, 24 So. 15, it was held that an order of the commission was not final, but is subject to judicial review. This of itself, it seems to me, would settle the proposition that the commission is not exercising judicial functions. If it did exercise judicial

functions, it could not be attacked collaterally, but would be conclusive until appealed from.

By section 4836 it is provided that the findings of the commission in any matter shall be *prima facie* evidence that such determination was right and proper. A judicial record is necessarily conclusive in its nature, and not open to dispute unless on direct appeal where the question is properly raised.

By section 4849 of the Code, witnesses may be examined before the commission and the examination is required to be as nearly as may be possible similar to that course pursued by arbitrators, and is not according to the rules and standards adapted to the use of courts. Under the terms of this section, parties do not have a judicial hearing, but the idea is that the commission in the discharge of its duties may adopt a method to inform itself of the facts necessary for an intelligent understanding of the case, before exercising its legislative functions. Nowhere in the law is any provision found where a commission may judicially enforce its orders, and by all the provisions of the law in this state, the hearing is subject to review in a separate and distinct court, in an independent action, and that would be necessary in order to carry out the due process of law required by the state and Federal Constitutions.

We next come to consider the class of cases that may be brought before the supreme court of the state.

By article 6 of the state Constitution, section 144, the judicial power of the state is vested in the supreme court, and such other courts as are provided for in that Constitution. Section 146 of the Constitution limits the supreme court to such jurisdiction as properly belongs to a court of appeals. Under that section of the Constitution, the supreme court has no original jurisdiction, and the only independent jurisdiction it may have pertaining to original jurisdiction is to hear and determine motions and issues necessary to the exercise of appellate powers,

and necessary to the enforcement of its orders. These powers are to be exercised incidental only to a case properly before the court on a case appealed from some court. It is not competent for the court to hear any appeal other than a judicial appeal, that is, an appeal from a judicial tribunal, and however important it might be to have the judgments of the legislative and executive departments passed on by the supreme court, this cannot be done directly from them (or either of them, to the supreme court. It has been held on high authority, and is a universal doctrine, so far as my research has gone, that a court, under the American theory of government, can only exercise judicial powers. The supreme court of the United States at an early date passed upon this question for itself.

In *Heyburn's case,* 2 Dallas, 407, 1 L..Ed, 436 they were called upon to exercise this function, and they held that it was not judicial in its nature, and the discussion appears in an elaborate note from several of the circuit judges in the different circuits of the United States, and the supreme judge of the court sitting with them, in which they doubt their power to hear and entertain their judicial power as commissioners or judges, but were of the opinion that it was not a judicial proceeding that they were called upon to exercise.

In *Farreira* v. *United States,* 13 Howard, 49 L. Ed..45, it was decided that the court could not exercise power not judicial in its nature; that under the separate powers theory of our constitutional law they were limited to the exercise of judicial power; and in the note appended to that case, it was decided by the supreme court that where the judges undertaking to exercise power conferred upon Congress as noted in *Heyburn's Case, supra,* and where the judges, acting as commissioners had undertaken to discharge such duties, and had made an award, which had been paid, and a friendly suit was brought to test whether the payment was valid, it was held by the court of the

United States, that they did not have the power to make the award because they were not acting judicially, and they were not deciding a judicial question.

In *Farreira's Case, supra,* the question presented was the question arising under the Act of Congress, directing the judge of the territorial court of Florida, to receive, examine, and adjudicate all cases of claims for relief, and report his decision, if in favor of claimants, with the evidence upon which they were founded, to the Secretary of the Treasury, who, on being satisfied that such claims were just and equitable, and within the provisions of the Treaty of 1849, was to receive and adjudicate certain claims in the manner provided in the preceding act of Congress; and the supreme court of the United States held in that case that an appeal from such judges, undertaking to act in such capacity would not lie because he was not exercising a judicial power; that the treaty itself designated no tribunal to assess the damages, and it remained for Congress to do so by referring the claims, according to the established practice of the government, in such cases to a commission, and that his decision was not a judgment of a court, but a mere award, and was reviewable, not by the supreme court, but by the Department, the Secretary of the Treasury. In that case, the court stated several propositions, among which are the following: "We will next consider the character of the tribunal whose decision is before this court for revision, and on this several points of inquiry suggest themselves: First. Was it a mere commission, not judicial in its character, whose decision could be taken up and revised by the Secretary of the Treasury in his capacity as an executive officer? Second: Was it a judicial tribunal, part of the judicial system created by the Acts of 1823 and 1824, which acted and decided judicially, but from which an appeal may not lie to a court but to the Secretary of the Treasury? Third: Or was it a judicial tribunal whose decision was final in all cases coming within the special

jurisdiction conferred upon it in the treaty? Fourth: Or was it an ordinary judicial tribunal from which either of the other cases an appeal lies to this court?''

It is stated parenthetically, that upon each of these questions the discussion was very exhaustive and elaborate, and a third question arose as to whether the decision was final, and whether an appeal would lie from the judge to the court.

On page 49 of 13 Howard and of the 14 L. Ed. 45 of the United States Supreme Court Reports, the court says: ''It would seem indeed in this case that the district judge acted under the erroneous opinion that he was exercising judicial power directly under the Constitution, and has given this proceeding as much of the formal proceedings in a court of justice as was practicable.'' And in a well considered opinion, the court held that it was not a judicial tribunal, and that an appeal did not lie to the supreme court.'' It would seem that under these authorities the question at bar would be settled against the power of appeal in this particular case.

Our own court has had occasion a number of times to decide whether or not it could entertain original jurisdiction, and whether a power, in its essentials a judicial question of original jurisdiction, and could be decided by the court. In 1906 the legislature by section 4910 of the Annotated Code provided that the circuit court should not have the power to enter a remittitur in a judgment, on pain of suffering a new trial, but that the question should be decided by the supreme court on appeal, and that the supreme court might order a remittitur of such sum on the judgment as it thought proper. The direction of the statute to the circuit court would overrule a motion for that cause, and the statute undertaking to give to the supreme court the power to pass upon this proposition was considered by the court in the cases of *Railroad Co.* v. *Wallace,* 90 Miss. 609, 43 So. 469; *Railroad Co.* v. *Reed,* 90 Miss. 616, 43 So. 950, and *Railroad*

*Co.* v. *Wymond Cooperage Co.,* 93 Miss. 73, 46 So. 557, and the court declared such section unconstitutional and void for two reasons, one that it undertook to deprive the circuit courts of original jurisdiction, and the other that it attempted to confer upon the supreme court original jurisdiction.

The supreme court also has occasion to consider the. question as to whether it could exercise original jurisdiction in two caess in 47 Mississippi. In the case of *Planter's Insurance Co.* v. *Kramer et al.,* 47 Miss. 200, the supreme court of this state held that the words of the Constitution, defining the jurisdiction as it is now defined in the present Constitution, could only include jurisdiction of such power as is revisory, and excludes all jurisdiction. The court said, in the concluding paragraph of that opinion, "that the Constitution in the practice of this court is not adapted to such proceedings; that if the supreme court is a substitute for a high court of errors and appeals, and was meant by the Constitution to be clothed with its powers and no more, the question is at rest adverse to the motion upon authority," citing 33 Miss. 22; 28 Miss. 36; 40 Miss. 29; 41 Miss. 551; 37 Miss. 533, and 3 Howard (Miss.), 54.

In the case of *Brown* v. *Carraway,* 47 Miss. 668, the court said: "The jurisdiction of the supreme court is exclusively revisory and affected with incidental power of a *quasi*-original character, and such as is necessary to preserve its dignity and decisions, and give complete operation to its appellate power," and held that the granting of a new trial, though subject to exception, and assignable as error, cannot be reviewed by this court until final disposition of the whole case, when on appeal or writ of error, the improper granting or refusal of a new trial will be considered and reviewed.

It is contended in this suit by the commission that it is in no sense a judicial tribunal, and that judicial powers could not be lawfully conferred upon it, that is, no power

that is primarily judicial in its nature. There are questions between the separate departments of government that occupy the position, as Mr. Bryan says of the ''twilight zone,'' and are purely incidental, that may be exercised by either of the other departments, but neither department of the government can exercise such functions as are primarily contrary to its original functions.

Section 1 of the state Constitution provides that the powers of the government of the state of Mississippi shall be divided into three departments, and each of them confided to a separate magistracy, to-wit, those which are legislative to one, those which are judicial to another, and those which are executive to another, and section 2 of the state Constitution, provides that no person or collection of persons being in one or belonging to one of these departments shall exercise any power properly belonging to either of the others. The acceptance of an office in either of the said departments will of itself, and at once, vacate any and all offices held by the person in either of the other departments.

We have already seen that the primary functions of the commission are legislative and administrative, and such being the case, it is not within the power of the legislature to confer judicial power upon the commission. The legislature itself is as much subject to the provisions and terms of the Constitution as any other department of the state government. The Constitution is the creation of the people themselves. It is a distributing and vesting of the powers held by the people to a proper tribunal deemed by them necessary for the protection and conservation of their rights and liberties as a free people; and the powers of the legislature are delegated, and while the delegation is general except as restricted in the Constitution of this state, or of the United States, yet every prohibition written in the Constitution is as binding upon the legislature as upon the courts, and under the scheme of government that we have, the Constitution

is supreme in its declarations, and every prohibition against the exercise of power is self executing, and cannot be disregarded by any department of the government. Every officer, and every voter in the state, before the exercise of any power of government of any kind whatever, swears upon his solemn corporal oath that he will faithfully support the Constitution; and any law passed in violation of the Constitution of the state of Mississippi, or any act rather, so passed, is of no effect, and is void, and it is the duty of the court to so declare it, and if the legislature undertakes to confer any power upon either a man, or a body of men, and where such body has already been vested with a power in another department of the government, it transcends its authority and its act is of no force or efficacy.

In the case of *State* v. *Armstrong,* 91 Miss. 513, the supreme court of this state held that the mayor of a municipality was a public officer within the meaning of the section of the Consitution, and that as the office of mayor was executive in its nature, that he could not exercise the judicial functions of a justice of the peace; that under the separate power theory of the government, these powers could not be blended in the same person at the same time, and that the acceptance of the office of mayor by a justice of the peace itself vacated the judicial office under section 2 of the state Constitution.

The court has also decided that the legislature itself cannot exercise judicial power, and in the case of *Isom* v. *State,* 36 Miss. 300, held that it was not within the power of the legislature to undertake any act that was judicial in its nature, and the direction of the legislature to set off benefits of property condemned for the public use against the value of the property was the exercise of a judicial power, and that the legislature could not exercise it, and that its act in this respect was void, and the court considered the case, treating the direction of the legislature as void, and of no effect whatever.

In *Lawson* v. *Jeffries,* 47 Miss. 696, 12 Am. Rep. 342, the supreme court of this state held that a constitutional convention holding the powers of the people in their sovereign capacity in their hands could not exercise a judicial power; that the functions of a constitutional convention were necessarily legislative in their character, and that it was a fundamental principle that under the American theory of government, it could not exercise the powers of other departments of the government. To the same effect see *Qunitini* v. *Bay St. Louis,* 64 Miss. 483, 1 So. 625, 60 Am. Rep. ——.

And the same rule has been held to apply to a municipality, that such municipality could not act in contravention of the separate power theory of the government. See *Ex parte O'Leary,* 65 Miss. 80, 3 So. 144. See also *Nebraska Telephone Co.* v. *State, ex rel. Yeiser,* 55 Neb. 627, 45 L. R. A. 113, 76 N. W. 171; *Norealk Street Railway Co.* v. *State,* 69 Conn. 576, 39 L. R. A. 794, 37 Atl. 1087; 38 Atl. 708.

That the rate making power, which by our law, is vested in the railroad commission, is legislative and not judicial in its nature, see Beall on Railroad Rate Regulation, section 1304; *Interstate Commerce Commission* v. *Railroad Co.,* 167 U. S. 499, 42 L. Ed. 243, 17 S. C. Rep. 896; *Railroad Co.* v. *Bryan,* 123 Fed. 946; *State* v. *Wilson,* 121 N. C., 472; 28 S. E. 535.

In the case of *Western Union Telegraph Company* v. *Myatt,* 98 Fed. 335, in an elaborate opinion delivered by Judge HOOK, it was *held,* that the rate making power was legislative and administrative in its nature, and that the statute of Kansas, session laws of 1898, chapter 28, creating the court of visitation, and undertaking to confer upon such court the power of making rates and other orders of this kind for the government of railroads and other common carriers, and at the same time giving the court the functions and powers of a court, with all the machinery and equipment of a court, was in conflict with

the Constitution of the state of Kansas, directing the separate powers of the government to be vested in three distinct departments; that it could not stand as being constitutional, because it partook of the powers of more than one of the departments of this government. That opinion reviews in an elaborate manner the authorities on the proposition involved in the separation of the powers of the government.

In the case of the *State* v. *Johnson,* 61 Kan. 843, 6 Pac. 1060, 49 L. R. A. 662, the supreme court of Kansas itself reached the same conclusion in a very able and exhaustive opinion, concurred in by a majority of the court, in which the question of the distribution of the powers of the government were very ably discussed.

In that case before the Kansas supreme court, the judge of the visitation court being of the opinion that the act could not confer upon them lawfully powers in two departments of the state government, declined to take cognizance of an order to make a rate for a railroad company; the case was appealed to the supreme court where it was declared unconstitutional, and could not be sustained.

In Kansas, the provisions of section 2 of our Constitution were not written in their state Constitution, but the court construed a section similar to our section 1 as being mandatory in its terms and effect, and held that it had the same meaning that section 2 of our Constitution means in express terms.

In the case of *Railroad Co.* v. *Minnesota,* 134 U. S. 418, 33 L. R. A. 970, it was *held,* that where the rate making power is conferred upon the commission without power to resort to the courts, making the action of the commission final as to the reasonableness of the rates, was unconstitutional, in that it deprived the person of access to the courts, and of a judicial hearing, the rate-making power being legislative in character; and undertaking to deny access to the courts in order to test the reasonable-

ness of a legislative act of this kind was beyond the power of the state.

This question is so important in its bearings, and is deemed by all writers on free government and constitutional law as being essential to the maintenance of free government, that I think the court should deliberate long before undertaking to sustain a proceeding as authorized in the Act of 1908, chapter 86, page 71, because the sole effect of said act would be to blend these powers that are deemed so essential to keep separate, and if sustained may be blended at will in any other tribunal or tribunals under the state until the line of distinction between the powers and the benefits to be derived from maintaining the separate powers would be eliminated.

Smith, C. J., delivered the opinion of the court.

This is an appeal from an order made by the Railroad Commission upon a petition filed with it by R. E. Dodd, directing appellant to re-establish a crossing over its right of way for the use and benefit of Dodd.

Chapter 86 of the Laws of 1908, under which the appeal is taken, provides "that whenever the railroad commission shall make an order, the validity of which shall be disputed upon the ground that the commission was without power to make it, or whenever the commission shall refuse to make an order asked for upon the ground that it was without power to make it, any person feeling aggrieved by the action of the commission may appeal therefrom directly to the supreme court. Upon such appeal the supreme court shall decide nothing except as to the power of the commission in the premises, and all other questions which may be involved shall remain unaffected thereby."

Appellees now move to dismiss the appeal on the ground that this statute is in violation of section 146 of our state Constitution, which is as follows: "The supreme court shall have such jurisdiction as properly be-

longs to a court of appeals." The jurisdiction which properly belongs to a court of appeals includes only such as is of a revisory character, and necessarily implies that the matter revised must be a judicial decision, rendered by a tribunal clothed with judicial power. *Planters' Ins. Co.* v. *Cramer,* 47 Miss. 200; *Y. & M. V. R. R. Co.* v. *Wallace,* 90 Miss. 609, 43 So. 469, 122 Am. St. Rep. 321. "Judicial decision is the application, by a court of competent jurisdiction, of the law to a state of facts proved, or admitted to be true, and a declaration of the consequences which follow." *Le Blanc* v. *Railroad Co.,* 73 Miss. 463, 19 So. 211. And the judicial power of courts includes, among other things, the power to hear and finally determine controversies between adverse parties. 4 Words and Phrases, 3854 *et seq.* In *Auditor* v. *A., T. & S. F. R. R. Co.,* 6 Kan. 500, 7 Am. Rep. 575, it was *held* that the words "'appellate jurisdiction,' as used in Const. article 3, paragraph 3, providing that the supreme court shall have such 'appellate jurisdiction' as may be provided by law, means to revise and correct the proceedings in a cause already instituted, and necessarily implies that the subject-matter has already been instituted in and acted on by some other court, whose judgment or proceedings are to be revised. The fact that there has been a decision, however, is not sufficient; but there must have been a decision by a court clothed with judicial authority and acting in a judicial capacity. The tribunal from which an appeal lies need not be called a 'court;' but it must be one having the attributes of a court—a tribunal where justice is judically administered." In *Hubbell* v. *McCourt,* 44 Wis. 584, it was said that "'appellate jurisdiction,' spoken of in the Constitution, is that kind of appellate jurisdiction which had theretofore been exercised by the highest judicial tribunals of the respective states, and not an unlimited appellate jurisdiction over any matter or thing arising either in courts or out of courts which the wisdom or folly of any future legislature

might see fit to confer or impose upon it. The appellate jurisdiction should be limited to the judgments and orders made by the courts of the state, and 'orders' made by judges or other officers out of court cannot be the subject of review in the first instance in the Supreme Court.'' 1 Words and Phrases, 453. The rule herein announced has the sanction of the great name of Story, for in section 1761 of the second volume of the fourth edition of his Commentaries on the Constitution he used this language: ''The essential criterion of appellate jurisdiction is that it revises and corrects the proceedings of a case already instituted, and does not create that cause. In reference to judicial tribunals, an appellate jurisdiction, therefore, necessarily implies that the subject-matter has been already instituted in and acted upon by some other court, whose judgment or proceedings are to be revised. This appellate jurisdiction may, be exercised in a variety of forms, and, indeed, in any form which the Legislature may choose to prescribe; but still the substance must exist before the form can be applied to it. To operate at all, then, under the Constitution of the United States, it is not sufficient that there has been a decision by some officer or department of the United States; it must be by some one clothed with judicial authority and acting in a judicial capacity.

Turning now to the statute creating the railroad commission, we find that it is a mere administrative agency, having nowhere been given the power to apply the law to a state of facts and to make a final declaration of the consequences which follow; all of its orders being subject to review by the courts, and when called in question being only *prima facie* correct. Code, section 4836; *Western Union Telegraph Co.* v. *Railroad Commission of Mississippi,* 74 Miss. 80, 21 So. 15; *Mississippi Railroad Commission* v. *Illinois Central Railroad Co.,* 203 U. S. 335, 27 Sup. Ct. 90, 51 L. Ed. 209. In *Western Union Telegraph Company* v. *Railroad Commission* it was said that

"the findings and determination of matters committed to the railroad commission by it are not final and conclusive, and were never so intended by the statute.  It is a mere administrative agency, although, in some respects, it exercises *quasi*-judicial power.  But at last the reasonableness and consequently the lawfulness of its determination is left subject to judicial inquiry and decision.  If a common carrier, required by the commission to do an act, is of opinion that the requirement is a violation of its legal rights, it may refuse compliance, and if, upon judicial inquiry, its contention is supported, it is not punishable or liable for a failure to comply.  But it takes the risk of coming under all penalties and liabilities declared by the statute if, upon such inquiry, the courts uphold the action of the commission.  The statute, in express language, so provides.  Section 4248 of the Code (4836 of our present Code) declares that 'all findings of the commission, and the determination of every matter by it, shall be in writing, and proof thereof shall be made by a copy of the same, duly certified by the secretary under the seal of the commission; and whenever any matter has been determined by the commission, in the course of any proceedings before it, the fact of such determination, duly certified, shall be received in all courts and by every officer in civil cases as *prima facie* evidence that such decision was right and proper.' "  In *Stone* v. *Y. & M. V. R. R. Co.*, 62 Miss. 607, 52 Am. Rep. 193, this court, and in *Stone* v. *Farmers' Loan & Trust Co.*, 166 U. S. 307, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636, the supreme court of the United States, necessarily held, in the language of the latter court in *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 394, 14 Sup. Ct. 1053, 38 L. Ed. 1022, that "such a commission is merely an administrative board created by the state for carrying into effect the will of the state as expressed by its legislation."  In deciding whether or not the Connecticut Railroad Commission was clothed with judicial authority, the supreme court of that state, in

*State* v. *New Haven Co.*, 43 Conn. 351, said: "We think that the commissioners were not judges, that their duties are not judicial, and that their decision was not a judgment, in such a sense as to have the effect claimed for it. The commissioners are nowhere in the statute called or referred to as judges. The Constitution declares that the judicial power of the state shall vest in the supreme court of errors, the superior court, and such inferior courts as the general assembly shall from time to time ordain and establish. * * * Their duties, except in a very limited sense, are not judicial. They may, and doubtless do, in some cases, hear evidence, weigh it, and decide; and their decisions are in writing, and perhaps recorded. To that extent, as we said in *Chester* v. *Connecticut Valley Railroad Co.*, 41 Conn. 348, their duties are 'judicial in character,' and their decisions in popular language are often spoken of as judgments. But it is not their duty, and they have no power, to ascertain and determine the rights and enforce the relative duties of contending parties. Their whole power, and consequently their whole duty, in respect to the matter now under consideration, was to give or withhold their assent to the proposition of the railroad company. Their duties are not to enforce rights and redress wrongs, as a court of justice, but to stand in place of the legislature between corporations and the public and supervise the exercise of corporate powers, so that no injustice may be done. The legislature might, and for a considerable period of time did, discharge these duties itself; but as railroads became more numerous, and complaints more frequent, the power was wisely delegated to a convenient board, that could act promptly and with advantage to all concerned. The duties of this board, therefore, are not judicial, but such as pertain to the administrative powers of the legislature itself." See, also, *People v. Railroad Commission,* 158 N. Y. 430, 53 N. E. 163, and 33 Cyc. 46 and 52. From these views it necessarily follows that the railroad commission

is not a tribunal of that character from which the legislature is authorized to grant appeals direct to this court.

The only cases wherein the precise question here under consideration has been passed upon by the courts, which have come under our observation, are the cases of *State ex rel. Railroad Commission* v. *Wilmington & W. R. Co.*, 122 N. C. 877, 29 S. E. 334, and *Chicago, etc., Ry. Co.* v. *Railroad Commission of Indiana*, 38 Ind. App. 439, 78 N. E. 338, 79 N. E. 520. In the former the statute conferring the right of appeal was held invalid for the same reasons which have conducted us to a similar conclusion with reference to the statute here under consideration. In the latter statute, which provided for an appeal to an intermediate appellate court, was upheld on the ground that it was wholly immaterial whether the jurisdiction the court was called upon to exercise was strictly appellate or not, for the reason that the court itself was a creature of the legislature, and not of the Constitution, and consequently the legislature had power to confer upon it any jurisdiction it desired so to do, provided only that the act it was called upon to perform was judicial in character.

Our attention has been called to the fact that in *Railroad* v. *Adams*, 85 Miss. 772, 38 So. 348, this court held that this commission is a tribunal inferior to the circuit court, within the meaning of section 90 of our present Code, which confers upon that court power to review by *certiorari* the judgments of all courts inferior to it; but we are not here concerned with the correctness of that decision, the ground of which is not disclosed, nor do we think it was thereby the intention of the court to overrule the case of *Telegraph Co.* v. *Railroad Commission, supra,* and hold that this commission is a court, and not a mere administrative agency. The jurisdiction of the circuit court is very different from that of this court. It may be that it was properly given the jurisdiction to review by *certiorari* the *quasi*-judicial acts of a tribunal exercising *quasi*-judicial powers. 4 Stan. Enc. Proc. 919;

*People ex rel.* v. *Railroad Commission,* 158 N. Y. 421, 53 N. E. 163.

Moreover, what we are here, by this statute, directed in effect to do, is simply to render an advisory opinion to one of the other departments of the state government, and this the section of the Constitution now under consideration, by necessary implication, prohibits us from doing.

Motion sustained.

*Appeal dismissed.*