Box v. Straight Bayou Drainage Dist.

[In Banc. No. 21169.]

1. Courts. *Drainage district proceeding in chancery court is a "pending suit" within statute creating new county.*

Under section 13, chapter 348, Laws 1918, creating Humphreys county, proceedings for the establishment and maintenance of a drainage district instituted in the chancery court of Yazoo county, under chapter 269, Laws 1914 (section 4434 et seq., Hemingway's Code), are judicial and constitute a "pending suit."

2. Courts. *Jurisdiction not lost by exclusion of land from chancery court district.*

The chancery court obtaining jurisdiction of a drainage district under Laws 1914, chapter 269 (section 4434 et seq., Hemingway's Code), does not lose its jurisdiction because the land embraced in the drainage district is subsequently placed in another county in a different chancery court district.

Ethridge, J., dissenting.

Appeal from chancery court of Yazoo county.

Hon. Lamar F. Easterling, Chancellor.

From a decree affirming and approving an assessment by the Commissioners of the Straight Bayou Drainage District, C. B. Box appeals. Decree affirmed.

*Wise & Bridgeforth,* for appellant.

It has been agreed, between the appellant and the appellee that the sole question involved in the contest of the assessment of betterments is the right of the chancery court of Yazoo county to proceed in the prem-- ises—the question whether or not the chancery court of Yazoo county now has jurisdiction to administer and supervise the affairs of the Straight Bayou Drainage District, no part of the said district now being situated in Yazoo county.

The Legal status of the Straight Bayou Drainage Dis- trict. The Straight Bayou Drainage District, under the provisions of chapter 195 of the Laws of 1912, and chapter 269 of the Laws of 1914, is a body corporate, and has the power to contract and be contracted with, to sue and be sued, plead and be impleaded, etc. The administration of its affairs is in the hands of com- missioners, responsible to, and acting under the direc- tion of the chancery court of Yazoo county. Because of the fact that it was situated, at the time of its crea tion, partly in Yazoo and partly in Sharkey county, such a district is a *quasi*-public or *quasi*-municipal cor- poration. 9 R. C. L. 644; 14 Cyc. 1026; *Connell* v. *Woodard,* 5 Howard (Miss.) 665, Am. Dec. 173.

Municipal and *quasi*-municipal corporations are crea- ted in one of two general ways, either by a special statute, directly creating the particular corporation, or by the acceptance of and compliance with certain pre- liminary forms provided in a general law, for the crea- tion of such corporations. Drainage districts in all states are created under the latter method, and chapters 195 of the Laws of 1912, and chapter 269 of the Laws of 1914, provided the requirements and forms to be met and complied with in the state of Mississippi, in order to create such districts. Section 1 of chapter 269 of the Laws of 1914, and subsequent sections of the same act prescribe, in minute detail, the steps to be taken,

and where the territory embraced in the proposed district is situated solely in any one county, delivers the jurisdiction to supervise and control the affairs of the district to the board of supervisors of the county, but provides that, where the district is situated in two or more counties, the control and supervision of the affairs of the district are to be delivered to the chan- cery court, or the chancellor, of any county in wsich a part of the district is situated.

The Straight Bayou Drainage District was organized by the chancery court of Yazoo county, and its affairs controlled by the chancery court of Yazoo county, be- cause of the fact that, at the time of its creation, it was a bi-county district.

The Jurisdiction of the Chancery Court. The chan- cery court of Yazoo county obtained its jurisdiction, not by terms of the general statute prescribing its general jurisdiction, and not by inheritance from the powers of the higher court of chancery in England, but by the terms of the special drainage district acts. It is significant that its powers to regulate and control the commissioners of a drainage district, and supervise the drainage district's affairs, where the district is situated in two or more counties, are commensurate only with the powers of the board of supervisors, when the district is situated only in one county. Plainly, the chancery court is here acting only as an administrative board, just as the board of super- visors would act when exercising the same functions. The drainage laws further provide that, on contest of the location of drains, assessments of betterments, etc., appeals may be taken from the decision of the board of supervisors in single county districts to the chancery court of the county—plainly a new jurisdiction as a court is here conferred upon the chancellor of the county wherein the district is situated. When appeal has been taken from the decision of the board of supervisors, he

then hears the matter as a court, and not as an administrative officer, and his functions in this case are peculiarly different from those where the court has only the same control exercised in bi-county districts that the board of supervisors had in single county districts. In bi-county districts, on contest, the drainage acts provide for appeal to the supreme court when, in like manner, a contest having been started, the supreme court, as a judicial body, hears a contested and litigated case, while the chancellor was only acting, until contest was made as an administrative officer.

It is believed by the appellant that this distinction must be carefully borne in mind. Under the drainage acts, only the chancery court of a county wherein a portion of the district is situated has jurisdiction, and this jurisdiction is administrative, and not judicial. It is therefore believed by the appellant that the old maxim: "Equity jurisdiction having once attached, continues always" does not apply. In order that the appellee's contention may be sustained, the Supreme court must hold that, having once had jurisdiction of the administration of the affairs of the drainage district, because of the fact that the drainage district was created by the court, jurisdiction to administer its affairs must continue forever, or the supreme court must find that, in the act creating Humphreys county, the legislature relegated the control of this district to the chancery court of Yazoo county, though removing all of the territory included therein from the confines of the county.

We may dispose of the first proposition here, interpreting the law to mean that, because of the organization of the district by the chancery court of Yazoo county, eternal jurisdiction was intended to the chancery court of Yazoo county. We would find the chancery court of Yazoo county administering the affairs of the Straight Bayou Drainage District forever, we would find the chancery court having jurisdiction of the matter because

of the fact that its *situs* was in what was originally Ya-
zoo county territory when now the *situs* is no longer in
Yazoo county, and no longer under the territorial juris-
diction of the chancery court of Yazoo county. This
would breach the functional cannons of chancery juris-
diction, where control of land matters belonged to the
court, because of the *situs* of the territory involved with
in the territorial jurisdiction of that court. If the
Straight Bayou Drainage District had been a single
county district, wholly situated within the bounds of Ya-
zoo county, prior to the creation of Humphreys county,
and wholly situated within the newly created bounda-
ries of Humphreys county, under the theory that juris-
diction remains with the administrative board, be it
chancellor or board of supervisors, creating it, then we
would have the anomalous situation of the board of su-
pervisors of Yazoo county perpetually administering
the affairs of a drainage district wholly situated with-
out the boundaries of the county. This could not have
been the intent of the legislature in providing for the
creation of the drainage district, under the drainage
acts above referred to, where such administrative official
had jurisdiction because of the territorial situation of
the district.

Separate road districts are also *quasi*-corporations of
much the same *status,* legally, as drainage districts.
Their control and management was specifically provid-
ed for in the creation of Humphreys county, and the
appellant cannot but believe that drainage districts were
not specially provided for because of an unintentional
legislative oversight. The act creating Stone county,
where no drainage district existed, was copied almost
*verbatim* by the legislature, in creating Humphreys, and
it is believed that drainage districts were passed over by
this means. If the chancery court of Yazoo county
could have jurisdiction of a drainage district not with-
in its boundaries, or the board of supervisors of Yazoo

county have control over drainage districts not within its boundaries, then how could the interest of the taxpayers and landowners of the district be adequately protected. It was the legislative intent that officers responsible to these taxpayers and landowners should have the control of the administration of the districts' affairs.

### Is the Administration and Supervision of the Drainage District a Pending Suit?

The appellant feeling that the chancery court in a bi-county district, or the supervisor in a single county district, could not have jurisdiction of the administration and supervision of the affairs of a drainage district, solely because of the fact that the original creation of the district was consummated by either of these official bodies acting in its administrative capacity, feels that the only alternative left, whereby the supervision of the affairs of the drainage district in the instant case may be maintained by the chancery court of Yazoo county, is under the theory that this administration is a civil suit now pending in the chancery court of Yazoo county. It is provided by chapter 248, section 13, of the Laws of 1918, creating Humphreys county, "That all suits, both civil and criminal, now pending in the circuit and chancery courts of Washington, Humphreys, Yazoo, Sharkey and Sunflower counties shall remain and be finally determined in the said courts. The appellant submits that the administration and supervision of the affairs of this drainage district cannot be a civil suit. We have no objection to any definition of "suit," as broadly as its meaning has been construed, which can be presented. The mere administration of affairs constitutes no suit. The very minute that a contest arises, then a suit does exist. If, at the time of the creation of the Straight Bayou Drainage District, its organization had been contested before the chancellor, and appeal taken to the su-

preme court, under the provisions of the drainage act above referred to, then surely this contest of the organization would be a suit, and, if Humphreys county had been created while this contest was pending, certainly under the section of the Humphreys county act above cited, the creation of this district would still be a matter for decision by the chancery court of Yazoo county, and the chancery court of Yazoo county would retain jurisdiction for that purpose, but the Straight Bayou Drainage District had been created long before Humphreys county was created. It was in process of operation, and the chancery court of Yazoo county was administering and supervising its affairs, as an administrative body, just as the board of supervisors of Yazoo county would have administered and supervised its affairs had the district been situated solely within the boundaries of Yazoo county, at the time of its creation. At the time Humphreys county was created, there was then no suit. Immediately on the contest of the assessment of betterments by the appellant in this case, a suit arose out of the administration proceedings, but this suit is not a part of the administration proceedings, and this suit, arising subsequently to the creation of Humphreys county is not embraced by the terms of section 13 of chapter 348 of the Laws of 1918, because it is not a suit "now pending"—that is, now pending at the time of the creation of Humphreys county.

## Logical Result.

It is the appellant's contention that the chancery court of Yazoo county holds no continued jurisdiction after the creation of Humphreys county, because of the simple fact that the district was created by the order of the Yazoo county chancery court, and that the administration and supervision of the affairs of the district,

under the drainage acts above set forth, is not a pending suit within the meaning of section 13, chapter 348, of the Laws of 1908. Therefore either the Straight Bayou Drainage District must die because of Humphreys county, or there must be somewhere implied, within the law creating Humphreys county, steps into the administrative functions once held by the chancery court of Yazoo county.

Whatever the result may be, the appellant cares only to see the matters of the drainage district administered and supervised by a legally constituted administrative board and would rather that the district die, than that it be administered and supervised in an illegal manner.

## COMMENT ON AUTHORITIES.

The appellant has been unable to find any cases directly involving the question here in litigation, nor has the appellee, it seems from the cases cited in support of its contention. The cases cited by the appellee, *Bass* v. *Elliott,* 105 Ind. 518, 5 N. E., 663; *Croom* v. *Wilson,* 104 Ind. 583,—N. E. 165; *Hockemeyer* v. *Thompson,* 150 Ind. 176, 48 N. E. 1029, 49 N. E. 1059; *State of Missouri ex rel. Otto Kachtitsky* v. *Riley,* 203 Mo. 175, 101 S. W., 567, all are suits, because contest was filed, and exceptions made to finding of the administrative board, when appeal was taken to the courts in manner provided by statute in each case and therefore are not authority for the position that administrative proceedings are a suit but are authority for the contention of the appellant that, wherever litigation arises from a contest of a ruling of an administrative board controlling and supervision drainage districts, such contest then becomes a suit, or a civil suit. In other words if the drainage district had been in process of creation and its organization had been contested, at the time of the

creation of Humphreys county and contest was made before that time, then, in either case, the cases above cited would be authority supporting the jurisdiction of the chancery court of Yazoo county to hold these litigated contests as suits, and finally determine them, but, in no case are they authority for the perpetual holding of an administrative matter not within the territorial jurisdiction of the official body supposed to administer and supervise.

This distinction is clearly drawn in the Vermont case of *Dunn* v. *Town of Powhal,* cited in the brief of the apellee. *Upshur Co.* v. *Rich,* 135 U. S. 467, respectfully submitted.

*Barbour & Henry* and *Barnett & Perrin,* for appellees.

The position is taken in the brief for appellant that the administration of the affairs of the appellee district is not a pending suit, but purely an administrative matter, placed in the hands of the chancery court. It is contended ingeniously by counsel that such administration is not a suit, but only an administrative matter, such as is usually exercised by boards of appraisers, etc., and that, as the legislature, in the act creating Humphreys county did not provide for the transfer of the cause then the anomalous situation must exist that everything that has been done in the creation of this and other drainage districts similarly situated, is of no effect, and that the district, by legislative blunder, dies.

The counsel take the position that, as there is no longer any of the territory of the Straight Bayou Drainage District in Yazoo county, the jurisdiction of the chancery court of Yazoo county to administer the affairs of the district to the extent and in the manner provided by law has ceased, notwithstanding it was through that court, as provided by law, that the district was created organized, and its affairs administered,

up to and since the time of the creation of Humphreys county in which county and the county of Sharkey, the territory of said district is now situated.

While urging this, counsel admit that, if the chancery court no longer has jurisdiction, there exists no court or body anywhere that is vested with this power and jurisdiction given by the drainage district act, and which can perform these necessary functions, and, therefore, the district ceases to exist, and everything done is of no effect, but rather that the district has become dormant until some legislative action is taken. Such a result was never contemplated by the legislature, and should not be reached by the court, if it can be avoided. When created and organized, the district became, as counsel in their brief argue a body, corpo rate, a legal entity, possessing the powers and subject to the duties conferred and imposed by law. While this territory was at the time of its creation, in Yazoo and Sharkey counties it was not subordinate to these counties, nor is it now subordinate to the counties of Humphreys and Sharkey. Its legal existence and entity is distinct from and independent of these counties, and, in this respect, materially differs from road districts, which must remain under the control of the authorities of the county in which they are located.

This is for the very manifest reason that, under the constitution, the board of supervisors of each county is given exclusive control and jurisdiction over the matter of roads, ferries, and bridges, and the matter of the creation or control of drainage districts is by the constitution vested in no court or body. Drainage districts are created by statute, and are the creatures strictly of statute and the only constitutional restriction is that they must be created by general, and not local, laws. This is not true of road districts, for the reason just stated. The legislature had the power to provide for the creation, organization and administra-

tion of the affairs of drainage districts, by placing the necessary authority for these purposes in any court or body it saw fit. As a matter not obligatory upon the legislature, but of convenience and expediency, the law provides that the creation and organization of a drainage district whose territory is confined to one county shall be accomplished through the instrumentality of the board of supervisors of such county, but where the territory is situated in more than one county, the chancery court of any county in which any part of the land is situated is to be the instrument. The particular court is a matter to suit the convenience and plasure of the petitioners.

The legislature having vested the power in the chancery court, could as easily have put it in any other body, or in any other tribunal. Since, however, it saw fit to fix the tribunal in which the district could be created and its affairs administered, necessarily that power remains in that court or tribunal until the same power which vested it there, to-wit, the legislature, sees fit to take from it the power so given. If the creation of Humphreys county where intentional or by oversight, as counsel argue, the legislature failed to take from the chancery court of Yazoo county a power which it had previously given it. Therefore, the power remains.

Jurisdiction having thus been properly vested in the chancery court of Yazoo county, we submit that it must there remain, until, by legislative act, it is vested elsewhere, and this has not been done.

The act creating Humphreys county does not, in express terms, nor by implication, divest the chancery court of Yazoo county of its jurisdiction, and it is therefore a necessary assumption that the legislature intended that the jurisdiction of the chancery court of Yazoo county should remain.

The fact that no part of the territory of the drainage district is now in Yazoo county does not, by itself divest

jurisdiction. Of necessity this could not be so, for the jurisdiction is not made dependent for its existence upon this. All that the law required to confer jurisdiction was that, at the time of the creation of the district, a part of the territory should be in Yazoo county. There is nothing in the law creating this district that divests the court of jurisdiction because of the exclusion of the territory from the county, and any argument on this line is one solely of expendience and convenience, and should be addressed to the legislature, and not the courts. If any hardship may result by reason of the continued administration of the affairs of the district by the chancery court of Yazoo county, rather than the chancery court either of Sharkey county or Humphreys county, it is a matter which the legislature, by an enactment, can easily remedy. In fact, it is no argument whatever to say that it is convenient or expedient that the affairs of the district should be further administered in the chancery court of Yazoo county, rather than in one of the other counties.

Counsel in their brief argue that, if this district originally had comprised territory in Yazoo county alone, and which territory, by the creation of Humphreys county, had passed to Humphreys county alone, an anomalous situation would have existed. It is not our contention to suggest seeming anomalies that do not exist.

SYKES, J., delivered the opinion of the court.

The Straight Bayou drainage district was established in 1916 by decree of the chancery court of Yazoo county, under chapter 269, Laws of 1914 (Hemingway's Code, section 4434, et seq.). The land comprised in this drainage district at that time was situated in the counties of Yazoo and Sharkey. There was no appeal from the order of the chancellor establishing the district as

provided in section 3 of this act, and commissioners were duly appointed according to the provisions of the act. Humphreys county was created in 1918 by an act of the legislature. The land in this drainage district which had previously been situated in Yazoo county was all given to Humphreys county under this act. The land in this drainage district is now in the counties of Humphreys and Sharkey. Subsequent to the crea- tion of Humphreys county and in 1919, the commissioners of this drainage district in due form gave notice that an assessment of betterments would be made. Such assessment was duly made by the commissioners and a report thereof made to the chancery court of Yazoo county. Notice was given as provided by the act to landowners that objections could be made and would be heard by the chancellor on a certain day. On that day there were no objections filed, and the chancellor affirmed and approved this assessment, from which judgment the appellant prosecuted this appeal.

The sole question presented to this court for decision is whether or not the chancery court of Yazoo county has jurisdiction to administer and supervise the affairs of this drainage district now, since no part of the district is now in Yazoo county. Under chapter 348, Laws of 1918, creating Humphreys county, there is no provision relating to drainage districts previously organized. Section 13 of this act provides:

"That all suits, both civil and criminal, now pending in the circuit and chancery courts of Washington Holmes, Yazoo, Sharkey and Sunflower counties shall remain and be finally determined in said courts."

The general scheme of chapter 269, Laws of 1914, makes the proceding for the establishment and administration of the drainage district a judicial proceeding. Section 1 of this act provides for the giving of notice looking to the organization of the district and to hearing objections, and the court, or the board of super-

visors, has to determine the sufficiency of the petition and pass upon the objection, etc. Section 3 provides that the order of the board of supervisors (or the chan-cellor or chancery court) establishing said district shall have all the force of a judgment and gives the right to appeal. Under this section the organization of the district by the chancery court of Yazoo county was a judicial act. In a broad sense of the word it was a "pending suit" in this court at the time of the decree organizing the district. After its organization, however, under this act there are many other things to be done, namely, the appointment of commissioners, the plan of the drainage district, the improvements to be made, and the assessment of betterments. Commissioners are appointed who attend to the administrative duties, who make reports to the chancery court, and there contests can be had and judicially determined. These contests are judicial questions and part of the general scheme and plan of administering the affairs of the drainage district.

At the time of the creation of Humphreys county, it is true there was no litigated question then pending before the chancellor in this matter for decision. The reports, however, of the commissioners and the assessments for betterments, had not been made. We think in its broad sense that this was a pending civil suit un-der section 13 of the act creating Humphreys county, and therefore that the chancery court of Yazoo county has jurisdiction of the affairs of this drainage district. One of the definitions of a "suit" in law in 37 Cyc. pp. 522 and 523, is, "A proceeding in a court of justice for the enforcement of a right." Another, "any legal proceeding of a civil kind; an action of any kind in a court of justice, whether commenced by writ, bill, or petition." In defining what is a "suit" Chief Justice Marshall, in the case of *Weston* v. *City of Charleston*, 2 Pet. 449, 7 L. Ed. 481, said:

"The term is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice by which an individual pursues that remedy in a court of justice which the law affords him. The modes of proceeding may be various, but if a right is litigated between parties in a court of justice, the proceding by which the decision of the court is sought is a suit."

The distinction between a mere proceeding administrative in its character, and a suit, is thus defined in the opinion in the case of *Upshur County* v. *Rich,* 135 U. S. 467, 10 Sup. Ct. 651, 34 L. Ed. 196:

"The principle to be deduced from these cases is that a proceding, not in a court of justice, but carried on by executive officers in the exercise of their proper functions, as in the valuation of property for the just distribution of taxes or assessments, is purely administrative in its character, and cannot, in any just sense, be called a suit; and that an appeal in such a case to a board of assessors or commissioners having no judicial powers, and only authorized to determine questions of quantity, proportion, and value, is not a suit; but that such an appeal may become a suit if made to a court or tribunal having power to determine questions of law and fact, either with or without a jury, and there are parties litigant to contest the case on the one side and the other."

In the establishment of this district there were parties litigant with the right to contest the formation of the district. The chancery court as a judicial act passed upon the legality, regularity, and sufficiency of the proceedings establishing the district. Whether or not there was an actual contest over the formation of the district is not shown by the record and would in point of fact make no difference, as his decree establishing the district was a judicial act. The laws under which the district was formed expressly provide for the con-

tinued jurisdiction of the court to pass upon the questions presented to it during the life of the district. It continues to be a pending suit.

A case very much in point is that of *State ex rel.* v. *Riley,* 203 Mo. 175, 101 S. W. 567, L. R. A. (N. S.) 900, which holds that the proceeding in the formation of a drainage district pending in a circuit court under the laws of the state of Missouri is a civil suit.

There may arise during the existence of the drainage district many different questions for adjudication, but all of the proceedings form a pending suit.

There is another reason, however, why the decree of the lower court must be affirmed, and that is this: Chapter 269, Laws of 1914, confers jurisdiction upon the chancery court where the land is comprised in more than one county. By this act the chancery court is empowered to continue this jurisdiction during the life of the drainage district. There is no provision whatever in the act transferring the jurisdiction to any other court under any conditions. There is nothing in the act prescribing any manner in which the court may lose this jurisdiction once acquired. The question is purely a statutory one, and the legislature has conferred this power in this case upon the chancery court of Yazoo county, and this court will continue to have jurisdiction of the affairs of this drainage district, unless the Legislature sees fit to deprive it of this jurisdiction.

The decree of the lower court is affirmed.

*Affirmed.*

Ethridge, J. (dissenting).

In my opinion the beginning of this controversy was the filing of the assessment roll assessing the benefits, and, as that was filed after the passage of the law creating Humphreys county, the proceeding should have

121 Miss.—55.

been filed in that county. Section 13 of the act creating Humphreys county provides:

"That all suits, both civil and criminal, now pending in the circuit and chancery courts of Washington, Holmes, Yazoo, Sharkey and Sunflower counties, shall remain and be finally determined in said courts."

Inasmuch as the assessment roll of benefits was not filed until long after the approval of this act, this suit cannot be said to be a pending suit unless it was a part of a suit pending prior to that time in the chancery court of Yazoo county, and unless the creation of the drainage district under chapter 195, Laws of 1912, as amended by chapter 269 of the Laws of 1914, was a judicial proceeding, and was undetermined prior to the creation of Humphreys county. Laws of 1914, chapter 269, section 1, provides for the creation of drainage districts, and that on the petition of the owners of real property, describing the territory to be created into a district, the board of supervisors, or the chancery court in cases pending there, shall publish notice in a newspaper having circulation in the proposed district of the intention to organize a drainage district and appoint a day to hear objections, if any are offered; and unless at the hearing a majority of the landowners, owning a majority of the land proposed to be included in the proposed district, shall object to the organization, the district would be created as therein provided, but if such majority shall protest that such board. or such court shall determine whether it shall proceed with the organization, and maps out a program of procedure, unnecessary to set out in this opinion, and upon the filing of the report that the clerk shall give notice by publication calling upon the persons interested to appear on the date to be fixed, not earlier than twenty days nor later than forty days after the first publication, to show cause for or against the establishment of said district, and further provides for a hearing by

the board, or by the chancery court in cases before it, by which the question will be determined. By section 3, chapter 269, Laws of 1914, it is provided that such order of the board or chancellor shall have all the force of a judgment, and that any owner of real property within the district may appeal from said judgment to the chancery court, or chancellor in vacation, if from a decision of the board of supervisors, or to the supreme court if from a finding of the chancery court or chancellor, within twenty days after such order has been made; but, if no appeal is taken within that time, such judgment shall be deemed conclusive and binding upon all real property within the district and upon the owners thereof; and that any owner of property in the district proposed to be organized may within a like time, and in a like manner, appeal from an order refusing to establish such district.

There was no appeal within twenty days as provided therein, and, if the matter was a judicial one at all, it was final under the very terms of the act long before the creation of Humphreys county and ceased to be a pending suit. In my opinion, however, this proceeding is not a judicial proceeding, but is a proceeding of a legislative and administrative nature, and the legislature could have created the district itself without the intervention of any other agency whatever. The legislature may not change the nature of a legislative function by imposing upon a board or other agency powers and discretions which the legislature itself may have exercised without the intervention of such proceedings or board.

The creation of the drainage district is analogous to the creation of a municipality, or any other taxing district. It is legislative in its very nature, and not be judicial. It is true the legislature may enact a law to come into force in certain territory upon conditions, and may create an administrative board to determine

the facts upon which said law may come into force in such territory; but doing so does not make the determination of these facts a judicial function. The legislative department may determine the facts for itself, or it may intrust that function to another body; but doing so does not make such body a judicial body, nor its proceedings a judicial proceeding. The executive department in the exercise of its functions frequently has to determine facts, but such a determination of facts by the executive is not the exercise of a judicial function.

In *Railroad* v. *Dodd,* 105 Miss. 23, et seq., 61 So. 743, 49 L. R. A. (N. S.) 565, it was held that proceedings before the railroad commission were not judicial functions from which an appeal could be granted to this court, and that chapter 86, Laws of 1908, granting an appeal, was invalid. For additional authorities, see the opinion in that case and the briefs of counsel.

Section 7, chapter 269, Laws of 1914, provides for the assessment of benefit to accrue to the land of landowners in such district, and provides for the filing of such assessment and the giving of notice by publication, and that parties aggrieved may have a hearing, and that such board shall "enter its findings thereon, either confirming such assessment, or increasing, or diminishing the same;" and its finding, whether protest is filed or not, shall be final and have the force and effect of a judgment from which an appeal may be taken within twenty days, and that such assessment "shall stand as a final assessment of benefits upon the lands of the said district, . . . unless in the opinion of the commissioners it becomes necessary to raise the assessment of benefits to such lands because of additional benefits to the lands other than those assessed, or because it becomes absolutely necessary in order to raise funds to preserve and maintain the improvements of the district." Clearly, the proceeding for assessment of the benefits is a suit en-

tirely separable from and independent of the original order creating the district and the filing of the assessment roll, and the giving notice thereunder is the beginning of the suit, as this and all proceedings subsequent to it was admittedly made and instituted subsequent to the approval of the act creating Humphreys county, and it should have been instituted in the chancery court of Humphreys county, or that of Sharkey county. Other sections of the act creating Humphreys county provide for transcripts of records from the old counties to the new county so far as they affect titles or property in Humphreys county.

In the present case, the chancery court has undertaken to exercise jurisdiction over territory situated beyond the confines of its district. Section 261, Hemingway's Code (section 505, Code of 1906), provides:

A chancellor shall be appointed for and from each of said districts. He may hold terms of court in any other district with the consent of the chancellor thereof when in their opinion the public interest may require."

Under this section he is to be appointed "for" and "from" each of said districts, and it is provided that he may hold terms of court in any other district "with the consent" of the chancellor thereof "when in their opinion the public interest may require." In all other cases his functions are limited to his own district, and it was clearly unlawful for him to exercise judicial powers affecting the citizens and property of people entirely beyond the confines of his district.